## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **HOLLY LELEUX-THUBRON** | * | **CIVIL NO. 6:13-0852** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **IBERIA PARISH GOVERNMENT, ET AL**. | * | **MAGISTRATE JUDGE HILL** |

## <u>REPORT AND RECOMMENDATION</u>

Pending before the undersigned for report and recommendation is the Second Motion to Dismiss filed by the defendants, the Iberia Parish Government (the "Parish"), the Iberia Parish Council (the "Council") and Iberia Parish Council Members Thomas J. Landry ("Landry"), Troy F. Comeaux ("Comeaux"), Bernard Broussard ("Broussard"), Ricky J. Gonsoulin ("Gonsoulin"), Glenn Romero ("Romero"), Roger Duncan ("Duncan"), Jerome Fitch ("Fitch"), and Marty Trahan ("Trahan"), (collectively the "Council Members"). [rec. doc. 30].  Plaintiff Holly Leleux-Thubron (Thubron") has filed Opposition, to which the defendants have filed a Reply. [rec. docs. 33 and 34].  Following oral argument on the Motion, both parties filed post-hearing memoranda. [rec. docs. 37 and 39].

For those reasons set out below, it is recommended that the Motion to Dismiss be **granted in part and denied in part** and, accordingly, that plaintiff's federal law claims against the Council Members in their individual and official capacities be **dismissed**, that plaintiff's Fourth Amendment**,** Fourteenth Amendment equal protection, First Amendment, § 1983 conspiracy and § 1985(3) conspiracy claims be **dismissed**, and that

plaintiff's Fourteenth Amendment procedural due process and state law claims asserted against the Iberia Parish Government and the Iberia Parish Council remain pending.

## BACKGROUND

Plaintiff filed the instant civil rights lawsuit against the defendants pursuant to 42 U.S.C. § 1983 and 1985(3). [rec. doc. 1, ¶ 1 and 102].  After the withdrawal of the defendants' original Motion to Dismiss, the plaintiff filed an amended complaint. [*See* rec. docs. 5, 23, 24 and 25].  In her amended complaint, plaintiff alleges the following facts.

Thubron was hired on February 26, 2012 as a Maintenance Superintendent by Parish President Errol "Romo" Romero ("President Romero") after he had defeated incumbent Ernest Freyou.[1] [rec. doc. 25, ¶ 40, 71, 10 and 14].  Council Members Landry, Comeaux, Broussard, Gonsoulin, Romero and Fitch are alleged to have campaigned against President Romero.  [*Id*. at ¶ 11].

In addition to her duties as Maintenance Superintendent, Thubron also performed official duties at the direction of President Romero which were outside the scope of her Public Works duties. [*Id*. at ¶ 71 and 74].  Thubron's salary, however, was entirely funded out of the Parish Wide Drainage Maintenance Fund, monies dedicated to the Public Works Department. [*Id*. at ¶ 74].

---

[1]Thubron alleges that her job title was "Maintenance Supervisor" however, the exhibits to her Amended Complaint and those submitted by the defendants reveal that Thubron's correct title was "Maintenance Superintendent".  Since the correct nomenclature has no effect on the resolution of the instant Motion, the undersigned shall refer to Thubron as a "Maintenance Superintendent."

In May 2012, Broussard met with President Romero to discuss the plaintiff's employment and the Council's desire to select the new Chief Administrative Officer. Broussard allegedly instructed President Romero to accept the Council's selection for Chief Administrative Officer and, so as to allow plaintiff to remain employed, restrict Thubron to the Parish Barn and ban her from the Iberia Parish Courthouse where the Parish administrative offices are located.  Broussard additionally promised that in the next budget the Council would find funding to dedicate towards plaintiff's employment in the capacity as a Communications Director/Public Information Officer.  If plaintiff was not so restricted, Broussard allegedly told President Romero that the Council would pursue a course of action to terminate plaintiff's employment.  [*Id*. at ¶ 42-47].  President Romero did not acquiesce in Broussard's demands. [*Id*. at ¶ 60].

Thereafter, by Resolutions 2012-159 and 2012-187 offered by Broussard, the Council contracted with a private accounting firm, Kolder, Champagne, Slaven & Company, LLC, to perform "an independent accountant's  report" (an audit) allegedly directed at the employees hired by President Romero, including plaintiff, "to determine if plaintiff met the job qualifications of a private pay scale". [*Id*. at ¶ 58 and 59].  These resolutions were directed at employees hired after January 11, 2012 and, accordingly, sought review of these employees' qualifications required by assigned job descriptions, accumulation of leave, job duties assigned to specific job titles, and the applicability of the funding source for payment of salaries for these positions. [rec. docs. 30-5 and 30-6].

On June 13, 2012, Resolution 2012-216 was offered by Landry.  This Resolution sought to amend the 2012 Parish Wide Drainage Maintenance Fund Budget to provide for the return of funding for plaintiff's salary to the Fund.  Thubron alleges that this was an attempt to *de facto* terminate her employment.  [rec. doc. 25, at ¶ 61 and 63].  With Council Member Glenn Romero absent, the Council unanimously voted to table the resolution. [rec. doc. 30-3].

During the audit, the auditor found a Memorandum of Record in Thubron's personnel file, which he determined had been prepared by the Human Resources Director, and finalized by President Romero, *after* Thubron was employed.  That Memorandum modified the general statement of plaintiff's job description. [rec. doc. 25, at ¶ 64-65].

When the audit was complete, the auditor asked plaintiff to sign an acknowledgment; plaintiff responded on June 21, 2012 submitting written reasons for her disagreement with the audit report, indicating her belief that the Council was discriminating against employees hired by President Romero and that the audit of her job duties and functions constituted discrimination and harassment, and was done in violation of § 2-06(B) of the Iberia Parish Home Rule Charter, which does not permit the Council to direct or supervise the hiring, job duties or functions of administrative employees. [*Id*. at ¶ 66-70].

The auditor met with Thubron, who verbally confirmed that in addition to the essential job functions included in her job description of Maintenance Superintendent,

Thubron performed other functions as directed by President Romero, including attendance at Council meetings, Town Hall meetings and conferences with President Romero.  The auditor therefore allegedly believed that there needed to be a "simple accounting fix" before the end of the 2012 fiscal year.  [*Id*. at ¶ 71-72].  The auditor's Report dated August 3, 2012 allegedly recommended that the Parish Wide Drainage Maintenance Fund, from which plaintiff was paid, be reimbursed from a non-dedicated source to the extent that Thubron's additional work did not conform to the dedicated purposes of the Fund. [*Id*. at ¶ 74].

The audit reported that of the four employees hired after January 11, 2012, one was no longer employed, and two performed duties within the scope of the job descriptions set at the time of their employment.  As to the fourth employee, Thubron, a memorandum of record prepared for President Romero on April 26, 2012 by the Human Resources Director present in Thubron's file, waived and modified the general statement of Thubron's job and the specific duties and responsibilities of the job, adding additional job duties, while waiving the minimum training, experience and physical requirements for the Maintenance Superintendent's position. Thus, the auditor concluded that Thubron did not meet the qualifications of her job description of Maintenance Superintendent when she was hired on February 28, 2012. [rec. doc. 30-2, pg. 2].

The auditor found no exceptions in the manner in which the four employees who remained employed by the Parish, including Thubron, accrued leave time. [*Id.* at pg. 3].

5

The report also reviewed six positions to determine if the duties and tasks assigned to the employees filling those positions conformed to the duties and responsibilities outlined in their job descriptions.  Thubron confirmed that in addition to performing substantially all essential job functions included in her job description, she also performed other duties as directed by President Romero. [*Id.* at pg. 4].

Finally, the auditor determined if the funding source for these employees' salaries was appropriate and, specifically, whether there were any restrictions on expenditures made by the funding revenue source.  The auditor determined that Thurbron's salary was being paid from the Parish Wide Drainage Maintenance Fund, a revenue source that is derived from a restricted dedicated property tax for constructing, improving, maintaining or operating drainage facilities in the Parish.

Because Thubron was performing other duties assigned by President Romero, the auditor recommended that Thubron's time be separated, and that the time spent performing those other duties which "do[] not conform to the dedicated purposes of the property tax" not be charged to the Fund, and that the Fund be reimbursed from a non-dedicated revenue source for the estimated cost of the time Thubron spent on these non-conforming activities; going forward, it was recommended that the administration allocate percentages of compensation for time spent between dedicated and non-dedicated purposes, based on estimates which were to be later re-adjusted based on actual time records. [*Id.* at pg. 5].

The Council deferred to President Romero to estimate the cost of reimbursement, if any; President Romero allegedly indicated that all of plaintiff's job duties were substantially related to drainage facilities and that payment from the Fund was therefore proper.  [rec. doc. 25 at ¶ 75].

At the August 22, 2012 Council meeting, President Romero informed the Council that he was in the process of preparing figures to separate plaintiff's time expended on her additional work as recommended in the audit report.  [*Id*. at ¶ 90].

Landry then proposed Resolution 2012-339 to be taken up at the September 12, 2012 Council meeting.  The summary of the resolution placed on the agenda for that meeting reads: "A resolution requesting a report and detailed plan of action by the Parish Administration rectifying the present situation of the payment of salary to the Drainage Maintenance Superintendent, who has assumed other duties which should be funded from a non-dedicated source."  [*Id*. at ¶ 82].

During the September 12, 2012 Council meeting, Landry offered a "substitute motion" seconded by Comeaux, to defund plaintiff's position. [*Id*. at ¶ 92].  A second "substitute motion" made by Council Member Ditch requested that a percentage of plaintiff's duties, if any, not related to the dedicated fund, be prepared by the Parish President for the next Council meeting.  [*Id*. at ¶ 93].  The Council defeated Ditch's substitute motion and adopted Landry's substitute motion, thereby defunding plaintiff's position, effective September 27, 2012, for the remainder of the 2012 fiscal year. [*Id*. at ¶ 94 and 96].

The Minutes of the September 12, 2012 meeting reveal that after President Romero indicated that he had not had time to prepare the requested information; several Council Members voiced concern, given that President Romero had advised during the prior August 22, 2012 Council meeting that he was in the process of preparing the necessary figures, and that the substitute resolution was not adopted until after Assistant District Attorney Dean Wattigny advised that because the Council had been made aware of the situation, rectifying action should be taken as soon as possible. [rec. doc. 30-4, pg. 1].

The summary of the substitute resolution adopted by the Council provides that because the audit report recommends that the percentages of the salary of the Maintenance Superintendent being paid from the parishwide Drainage Maintenance Fund budget, which is funded by a restricted dedicated property tax, be separated from the percentage of work assigned by the Parish President, which should be funded from a non-dedicated source, that until a detailed plan of action has been submitted by the Parish President, the funding for the salary and benefits for the position be removed "until the recommendation of the recent [audit] report . . . is rectified " . . .  "for the remainder of the year."

The Council therefore "amend[ed] the 2012 Parishwide Drainage Maintenance Fund Budget to remove the funding for the salary and benefits for the Drainage Maintenance Superintendent for the remainder of the year. . . ."  The Council further requested  a report and detailed plan of action by the Parish administration to rectify the

8

situation; the report and plan of action were to be presented to the Council at the next regular meeting, September 26, 2012.  [rec. doc. 30-4, pg. 2-3].

Plaintiff complains that she was not provided adequate notice that the Council intended to defund her employment, thereby denying her the opportunity for a hearing. [rec. doc. 25, at ¶ 83-84, 97].

By letter dated September 20, 2012, President Romero proposed to transfer from the general fund or, alternatively, from the Parish President's travel allowance, a total of $4,264.65, said sum representing 18.75% of plaintiff's total salary since her hiring.  [*Id*. at ¶ 102-103].  At the September 26, 2012 Council meeting, President Romero withdrew his proposal because of the defendants' disagreements with his estimates.  [*Id*. at ¶ 104]. The Minutes of that meeting indicate that the Parish President stated that all of the information requested was not ready and, accordingly, withdrew his original recommendation. Several Council Members expressed concern regarding the urgency for the funds to be reimbursed to the Fund. [rec. doc. 34-3, pg. 2; rec. doc. 25, at ¶ 105].

On September 27, 2012, President Romero wrote a letter to Human Resources in which he authorized Thubron to be paid her salary through a provision which allows the grant of administrative leave with pay from September 14, 2012 through Friday September 21, 2012.  He additionally noted that Thubron had worked Monday September 24, 2012 through September 27, 2012, for which he ordered her to be paid from undedicated funds.  The Parish President further opined that, based on resolution 339 adopted by the Council, Thubron had been "effectively terminated."  Accordingly,

9

because the Council's action would go into effect that afternoon, Thubron was entitled to two weeks of termination pay, which he expected would be paid. [rec. doc. 25-6].

By letter dated October 4, 2012, President Romero proposed the same 18.75% be transferred, but which also included a sum for plaintiff's benefits, for a total of $5,523.00. This proposal was allegedly not taken up at the October 10, 2012 or October 15, 2012 Council meetings.  [rec. doc. 25, at ¶105-106].  The Minutes of the October 10 meeting indicate that the matter was taken up and after questioning regarding the "final payout" to Thubron; Brown requested that the correct figure be presented to the Council.[2] [rec. doc. 34-4, pg. 3-4].

At the October 24, 2012 Council meeting, President Romero gave a report on the breakdown of costs associated with plaintiff's duties, including an amount to be repaid, a method of repayment and necessary financial adjustments. [rec. doc. 25, at ¶ 107].  The Council voted against expanding the agenda to adopt the Parish President's proposal.  [*Id.* at ¶ 108].  Three more Council meetings passed without consideration of the Parish President's proposal. [*Id.* at ¶ 109].

Council Member Brown placed Resolution 2012- 444 on the agenda of the November 19, 2012 Council meeting, to amend the 2012 general fund budget to reimburse the 2012 Parish Wide Maintenance Drainage Fund in the amount proposed by the Parish President in his October 4, 2012 letter ($5,523.00).  The resolution passed.  [*Id.* at 110].  The Minutes of that meeting indicate that resolution 339 became effective

---

[2]The record contains no documentation regarding the alleged October 15, 2012 meeting.

September 28, 2012 and because the resolution "resulted in the termination of the position for the remainder of the year" no future percentage allocation was assigned because "that position does not currently exist." [rec. doc. 34-5, pg. 4].

Based on these factual allegations, plaintiff sets forth federal causes of action pursuant to 42 U.S.C. § 1983 based on the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1985(3), as well as causes of action based on Louisiana state law.[3] [rec. doc. 25, ¶ 1, 217, 218, 219-239, 258 and 259].

With respect to her federal causes of action, plaintiff alleges that the defendants violated her First Amendment right to free speech by attempting to ban her from the Iberia Parish administrative offices and restricting her to the Parish barn, thereby "attempting to restrict [plaintiff] from giving the Parish President input on matters of public concern. . . ." [*Id*. at ¶ 219, 221].   She further asserts that when the Parish President did not agree to these restrictions, the defendant's retaliated by taking an adverse employment action against her for the exercise of her First Amendment rights. [*Id*. at ¶220].

The plaintiff further alleges that the audit of her qualifications, job functions and duties by the Council and Council Members constituted an unreasonable and

---

[3]While Thubron alleges a violation of both the Fifth and Fourteenth Amendments, the claim is properly construed as based on the Fourteenth Amendment which extends the same protection offered by the Fifth Amendment, applicable to federal action by the federal government, against action by state actors.  *See Freeman v. City of Dallas*, 186 F.3d 601, 612 and fn. 1 (5th Cir. 2001) *citing Hibben v. Smith*, 191 U.S. 310, 325, 24 S.Ct. 88, 48 L.Ed. 195 (1903); *Texas Catastrohe Property Ins. v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992); *See also Rodriguez-Silva v. INS*, 242 F.3d 243, 247 (5th Cir. 2001).

unconstitutional search in violation her Fourth Amendment rights, and that the defendants used this alleged unconstitutional audit to "seize" plaintiff's property interest in her employment.  [*Id*. at ¶ 225, 230].

The plaintiff further alleges, in a single paragraph, that the defendants violated her Fourteenth  Amendment right to equal protection by "discriminat[ing] against plaintiff in their practices by treating her unequally from other parish employees similarly situated . . . ." [*Id*. at ¶ 239].

The plaintiff further alleges that the defendants violated her Fourteenth Amendment rights to due process by "vot[ing] to adopt a resolution to defund plaintiff's position" without affording her notice and an opportunity for a hearing prior to her *de facto* termination.  [*Id*. at ¶ 232, 233-234, 237-238].

Plaintiff seeks both compensatory and punitive damages as well as an award of attorney fees pursuant to 42 U.S.C. § 1988.  [*Id*. at ¶ 261-263; *see also* Prayer for Relief].

By this Motion to Dismiss, the defendants contend that the plaintiff's claims should be dismissed pursuant to FRCP 12(b)(6) because the plaintiff has failed to state a § 1983 claim upon which relief may granted because: (1) plaintiff  has failed to demonstrate that she suffered a Constitutional deprivation, (2) the Council Members are entitled to Legislative immunity or, alternatively, qualified immunity, in their individual capacities, (3) plaintiff has not satisfied the elements of a § 1985(3) claim, and (4) plaintiff's state law claims may not be entertained in this federal court pursuant to the Louisiana Governmental Claims Act, La. R. S. 13:5101, *et. seq*.

12

**Rule 12(b)(6) Motion to Dismiss Standard**

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); F.R.C.P. 12(b)(6).  Moreover, it is proper to consider documents that a defendant attaches to a motion to dismiss, if such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim, as they form part of the pleadings. *Id*. at 498-499. Finally, in deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.  *Cinel v. Connick*, 15 F.3d 1338, 1343 fn.6 (5th Cir. 1994).[4]

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) *quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming,* 281 F.3d at 161-162 *quoting Tel-Phonic Servs., Inc. v. TBS Int'l, Inc*., 975 F.2d 1134, 1137 (5th Cir. 1992).

---

[4]In this case, all of the documents considered by this Court were either attached to, or referred to, in Thubron's Amended Complaint and are central to her claims, and/or are matters of public record. Accordingly, the instant Motion has not been converted to a Motion for Summary Judgment.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Harold H. Huggins Realty, Inc*. *v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011) *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

"A claim for relief is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Harold H. Huggins Realty, Inc*., 634 F.3d at 796 *quoting Iqbal*, 129 S.Ct. at 1949.   This includes the basic requirement that the facts plausibly establish each required element for each legal claim. *Coleman v. Sweetin*, - - F.3d - - , 2014 WL 958275, *4 (5th Cir. 2014) *citing Iqbal*, 129 S.Ct. at 1949 and *Twombly,* 550 U.S. at 557. However, a complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id. quoting Iqbal*, 556 U.S. at 678 *quoting Twombly*, 550 U.S. at 555.

"Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555; *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013). Thus, "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombley,* 127 S.Ct. at 1965 *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004); *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 at fn. 27 (5th Cir. 2009).  If a plaintiff fails to allege facts sufficient to "nudge[] [her] claims across the line

from conceivable to plausible, [her] complaint must be dismissed." *Twombley,* 127 S.Ct.

at 1974; *Malik v. Continental Airlines, Inc.*, 305 Fed. Appx. 165, 167 (5th Cir. 2008);

*Mitchell v. Johnson*, 2008 WL 3244283, *2 (5th Cir. 2008).

## LAW AND ANALYSIS

### I.  Claims asserted under § 1983

To state a cause of action under § 1983, the plaintiffs must allege two elements:

first, that the plaintiff was deprived of a right or interest secured by the Constitution and

laws of the United States and, second, that the deprivation occurred by someone acting

under the color of state law.  *Lauderdale v. Texas Dept. of Criminal Justice,* 512 F.3d

157, 165 (5th Cir. 2007) *citing Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th

Cir. 1994); *Cornish v. Correctional Services Corp.,* 402 F.3d 545, 549 (5th Cir. 2005)

*citing  West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *see also*

*Villanueva v. McInnis*, 723 F.2d 414, 418-419 (5th Cir. 1984) (requiring an actual

deprivation of a constitutional right, not the threat of a deprivation or a conspiracy to

deprive in the absence of an actual constitutional deprivation).

**Legislative Absolute Immunity**

The Council Members in their individual capacities claim absolute legislative

immunity.  In *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951),

the Supreme Court recognized absolute immunity from suit under 42 U.S.C. § 1983 for

state legislators. *See also, Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18

L.Ed.2d 577 (1967).  This absolute immunity from suit under § 1983 has been extended

to both regional legislators and local officials. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979);  *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 118 S.Ct. 966, 970 (1998)*; Hernandez v. City of Lafayette*, 643 F.2d 1188 (5th Cir. 1981) (holding the Mayor of the City of Lafayette absolutely immune from suit for damages); *Calhoun v. St. Bernard Parish*, 937 F.2d 172, 174 (5thCir. 1991), *writ denied*, *Calhoun v. Odinet*, 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992) (holding that Police Jurors of St. Bernard Parish were entitled to a legislative immunity against damages in their individual capacities).

However, absolute immunity from suit is limited to those acts taken in a legislative capacity, legislative activities, and to conduct in furtherance of their legislative duties. *Hernandez*, 643 F.2d at 1193-1194; *Lake Country Estates, Inc.,* 440 U.S. at 405; *Universal Amusement Co., Inc. v. Hofheinz*, 616 F.2d 202, 205 (5th Cir. 1980) (holding that city council members possessed absolute legislative immunity from liability under § 1983 for conduct in the furtherance of their legislative duties); *Bogan*, 523 U.S. at 49 (holding that local legislators are absolutely immune from suit under § 1983 for their legislative activities).  Simply stated, "absolute immunity only protects those duties that are functionally legislative, not all activities engaged in by a legislator." *Bryan v. City of Madison*, 213 F.3d 267, 272 (5th Cir. 2000) *citing Hughes v. Tarrant County Texas*, 948 F.2d 918, 920 (5th Cir. 1991).

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 55.  This is so because

16

it is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Id. citing Tenney*, 341 U.S. at 377.  Thus, even though a plaintiff may be "singled out . . . for investigation in order 'to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights'", if the act was done "in the sphere of legitimate legislative activity" absolute immunity will be recognized.  *Id. quoting Tenney*, 341 U.S. at 371; *Tenney*, 341 U.S. at 376.

To determine if an act is legislative, the Fifth Circuit examines the "nature of the facts used to reach the given decision" and then "focuses on the particularity of the impact of the state of action."  *Hughes v. Tarrant County Tex.*, 948 F.2d 918, 921 (5th Cir. 1991) *citing Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir. 1984); *Craig v. Police Jury Parish*, 265 Fed. Appx. 185, 190 (5th Cir. 2008) *citing Hughes*, 948 F.2d at 921.  "If the underlying facts on which the decision is based are 'legislative facts,' such as 'generalizations concerning a policy or state of affairs,' then the decision is legislative." *Hughes,* 948 F.2d at 921 *quoting Cutting*, 724 F.2d at 261.  "If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative." *Id. quoting Cutting*, 724 F.2d at 261.  Thus, the Fifth Circuit has "made a distinction between establishing a policy, act, or law and enforcing or administering it." *Id.* at 920.

In this case, the Council Members claim absolute legislative immunity for their actions.  However, applying the guidelines set forth above, it appears that although the

complained of resolutions were passed during Council meetings, the challenged conduct of the Council Members was not legislative.  Even though the challenged decisions concerned the proper allocation of Parish monies, these actions were not based on legislative facts.  They were not based on general facts regarding any policy, but, instead, were based on specific facts of an individual situation related to President Romero's hiring of personnel.

Furthermore, the actions did not purport to establish a general policy.  Rather, the actions were particular to, at most, seven new hires, including Thubron, three of whom were no longer employed at the time of the audit.  Moreover, the challenged actions do not appear to involve the degree of discretion and public-policy-making traditionally associated with legislative functions, but rather appear more akin to enforcement, or an administrative application, of existing policies, ensuring that employment policies and practices were followed and that dedicated funds were being used for their intended purpose. *See Minton v. St. Bernard Parish School Board,* 803 F.2d 129, 135 (5th Cir. 1986).  Accordingly, because the challenged conduct was not legislative, the Council Members are not entitled to absolute legislative immunity.

**Qualified Immunity**

The Council Members also claim qualified immunity.  When a legislator is not engaged in traditional legislative functions, they may nevertheless be entitled to qualified immunity applicable to other government officials.  *Hughes*, 948 F.2d at 920 *citing Minton*, 803 F.2d at 135; *Bryan*, 213 F.3d at 274.

18

Government officials are entitled to qualified immunity for civil damages if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In other words, qualified immunity is available when a reasonable official would not have known that his actions would violate a constitutional right that was clearly established at the time of the incident. *Harlow*, 102 S.Ct. at 2738. Qualified immunity is not merely a defense to liability but an immunity from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

Claims of qualified immunity require a two-step analysis. First, the court must determine whether the plaintiff has demonstrated that "the officer's conduct violated a constitutional right." *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003); *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999) *citing Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). If there is no constitutional violation, the court's inquiry ends. *Mace,* 333 F.3d at 623.

If the plaintiff properly pleads that she has sustained the deprivation of a constitutional right, the court must then decide whether the defendant's conduct was objectively reasonable in light of "clearly established" law  at the time of the alleged violation. *Hall,* 190 F.3d at 696 *citing Siegert*, 500 U.S. at 231-232. This "second prong

of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Estate of Sorrells v. City of Dallas,* 45 Fed. Appx. 325 (5th Cir. 2002) *quoting Hare v. City of Corinth, Miss.,* 135 F.3d 320, 326 (5th Cir. 1998); *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).  The analysis "generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were clearly established at the time [the action] was taken . . ." in light of the information the official's possessed.  *Anderson*, 483 U.S. at 639-640; *Wagner v. Bay City, Texas*, 227 F.3d 316, 321 (5th Cir. 2000) *citing Anderson*, 483 U.S. at 640.

Thus, even if it is determined that the official's conduct was unconstitutional, that is, that the defendant violated the plaintiff's clearly established constitutional rights, the court must nevertheless decide whether the conduct was "objectively reasonable" and, if so, the defendant may still be entitled to qualified immunity.  *Kipps v. Callier,* 197 F.3d 765, 768-69 (5th Cir. 1999) (citations omitted).  "Qualified immunity thus protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right of the plaintiff." *Wagner*, 227 F.3d at 321 *quoting Gutierrez v. City of San Antonio,* 139 F.3d 441, 445 (5th Cir. 1998) *citing Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040.

"The qualified immunity standard gives ample room for mistaken judgments . . . ." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).  Thus, if officials of "reasonable competence

20

could disagree . . . immunity should be recognized." *Gibson v. Rich*, 44 F.3d 274, 277

(5th Cir. 1995); *Tarver*, 410 F.3d at 750.  Further, qualified immunity should be

recognized "if a reasonable official would be left uncertain of the application of the

[clearly established law] to the facts confronting him." *Hopkins v. Stice*, 916 F.2d 1029,

1030-1031 (5th Cir. 1990) *citing Anderson*, 107 S.Ct. at 3038.

 While it is often appropriate to examine the qualified immunity inquiries

sequentially, courts are vested with sound discretion in deciding which of the prongs of

the qualified immunity analysis should be addressed first in light of the circumstances in

the particular case at hand.  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818

(2009).  This is so because "[t]here are cases in which it is plain that a constitutional right

is not clearly established but far from obvious whether in fact there is such a right." *Id.* at

237. In such cases, it is appropriate to bypass the first step analysis and decide only

whether the alleged right is clearly established. *Id.* at 238.

 When a defendant invokes qualified immunity, on motion to dismiss, the burden is

on the plaintiff to demonstrate the inapplicability of the defense. *Cantrell v. City of

Murphy*, 666 F.3d 911, 918 (5th Cir. 2012) *citing McClendon v. City of Columbia*, 305

F.3d 314, 323 (5[th]Cir. 2002) (*en banc*).

## A. Fourth Amendment Claims

 Thubron alleges that the audit of her qualifications, job functions and duties by the

Council and Council Members constituted an unreasonable and unconstitutional search in

contravention of her privacy rights. [rec. doc. 25, at ¶ 225].  She further alleges that the

defendants used this alleged unconstitutional audit to "seize" plaintiff's property interest

in her employment.  [*Id*. at ¶ 230].

The Fourth Amendment protects the "right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures. . . . "

*O'Connor v. Ortega*, 480 U.S. 709, 715, 107 S.Ct. 1492 (1987).  This protection extends

to two types of expectations, one involving "searches," the other "seizures." *United States

v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 165, 1656, 80 L.Ed.2d 85 (1984).  A "search"

occurs when an expectation of privacy that society is prepared to consider reasonable is

infringed.  *Id.*  A "seizure" of property occurs when there is some meaningful interference

with an individual's possessory interests in that property. *Id.*  The Fourth Amendment,

however,  bars only unreasonable searches and seizures.  *Maryland v. Buie*, 494 U.S. 325,

331, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

**Search**

To set forth a viable Fourth Amendment search claim, Thubron must demonstrate

that she had a legitimate expectation of privacy in the place or thing searched.  *See

Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); *United

States v. Ibarra*, 948 F.2d 903, 905 (5th Cir. 1991); *United States v. Gomez*, 276 F.3d 694,

696-697 (5th Cir. 2001) *quoting United States v. Cardoza-Hinojosa*, 140 F.3d 610, 614

(5th Cir. 1998).  A person has a legitimate expectation of privacy protected by the Fourth

Amendment if she has a subjective expectation of privacy, and if society is prepared to recognize that expectation as objectively reasonable.  *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *Gomez*, 276 F.3d at 697.  In assessing the reasonableness of an individual's expectation of privacy, no one factor is invariably determinative. *Gomez,* 267 F.3d at 698 *citing United States v. Haydel,* 649 F.2d 1152, 1154 (5th Cir. 1981) *citing Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

While the United States Supreme Court has recognized that the restraints of the Fourth Amendment may apply to searches by government employers, the "operational realities of the workplace  . . . may make some employees' expectations of privacy unreasonable."  *See O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 1497 (1987).

In this case, the record demonstrates that in order to perform the audit, the auditor looked at the Iberia Parish Government's employment policies and procedures, the job description for Maintenance Superintendent and Thubron's personnel file.   Clearly, Thubron had no legitimate expectation of privacy in either the Iberia Parish Government's employment policies and procedures or the job description for Maintenance Superintendent position, both of which appear to be of public record.  Rather, Thubron apparently contends that she had a legitimate expectation of privacy in her personnel file maintained by her employer against employer initiated review.

Initially, the undersigned notes that it is undisputed that the personnel file does not belong to Thubron.  Moreover, Thubron cites no case law indicating that employees have

a privacy interest in the personnel files maintained by their employers against employer initiated review.  To the contrary, the sole case found by the undersigned which considered a similar question held that no such reasonable expectation exists because it is entirely reasonable for an employer to access and utilize the information contained an employee's file.  *See Roberts v. Mentzer*, 382 Fed. Appx. 158, 165 (3ʳᵈ Cir. 2010).

Finally, under the circumstances of this case, the undersigned finds that plaintiff could, and indeed should, reasonably have expected that her employment file could be reviewed as needed for the legitimate concerns of her employer, Iberia Parish.

While Thubron contends that the Council did not have any legitimate reason for initiating the audit, or the power to do so, the record demonstrates the contrary.  The Council was clearly concerned about the use of a restricted dedicated tax fund and could properly order an investigative audit to address this issue.  *See* rec. docs. 30-5 and 30-6 (noting the Council's concern over the applicability of the funding source for payment of salaries for newly filled positions); rec. doc. 30-2, pg.5 (audit report's findings on the applicability of the funding source for payment of these salaries); Iberia Parish Home Rule Charter § 1-05 (granting the Parish government "the right , power and authority to pass all ordinances or resolutions . . . on all subject matters necessary, requisite or proper for the management of Parish affairs . . . "); § 2-08 (granting the Parish counsel the power to "make investigations into the affairs of the Parish government and related conduct of any Parish official, officer, employee. . . ."); § 2-09 granting the Parish counsel the power

24

to provide for "additional audits as it deems necessary, of the accounts and other evidence of financial transactions of the Parish government. . . .").

Additionally, under the pertinent facts, the need for the Parish to access and review plaintiff's personnel file to ensure the proper use of dedicated funds clearly outweighed any privacy interest Thubron may have had against such review.

Thus, while Thubron may have had a subjective expectation of privacy in her personnel file from employer initiated review, that expectation was objectively unreasonable.  As such, Thubron has failed to state a legally cognizable Fourth Amendment claim based on the alleged audit.  *Ramming, supra*.  Stated differently, accepting the facts plead by Thubron as true, she has failed to state sufficient facts to "nudge[] [her] claims across the line from conceivable to plausible." *Twombley, Lormond, Malik,* and *Mitchell, supra*. This Court need not reach the question of qualified immunity because plaintiff has failed to show a legally cognizable Fourth Amendment violation.

**Seizure**

Thubron has a Fourth Amendment right to be free from unreasonable seizure of her property.  While the Fourth Amendment's reach extends to property as such, the United States Supreme Court has cautioned that "the Amendment does not protect possessory interests in all kinds of property." *Soldal v. Cook County*, 506 U.S. 56, 63 at fn. 7, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) *citing Oliver v. United States*, 466 U.S. 170, 176-177, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984).  Further, the Supreme Court has

indicated that a "seizure" contemplates a physical intrusion on a possessory interest of some kind, whether an interest in the possession of an object or in oneself.  *See Horton v. California*, 496 U.S. 128, 133–34, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) *citing* J*acobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) ("a seizure deprives the individual of dominion over his or her person or property."); *see also Laughlin v. Olszewski,* 102 F.3d 190, 193 (5th Cir. 1996) *citing Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."); *Caldarola v. County of Westchester*, 142 F.Supp.2d 431, 438 (S.D. N.Y. 2001) *citing Horton, supra*.

In this case, Thubron apparently alleges that because she had a property interest in her classified employment with the Iberia Parish Government, the Council's decision to defund her position constituted an unconstitutional seizure of her property in violation of the Fourth Amendment.  Thubron's novel argument is based on her assumption that a property interest in her employment and a possessory interest for Fourth Amendment purposes are synonymous.  Thubron cites no case law in support of this position, and the undersigned has found none.

Moreover, the undersigned has found no case law indicating that one may have a possessory interest in one's employment.  Given that one cannot own or otherwise possess employment and that there can clearly be no physical intrusion into one's employment, the undersigned finds that no "seizure", as that word is contemplated by the Fourth

26

Amendment, has occurred.  Thus, Thubron has failed to set forth a legally cognizable

Fourth Amendment claim based on the alleged "seizure" of her job. *Ramming, supra.*

The facts alleged by Thubron do not allow the Court to draw the reasonable inference that

the defendants could be liable for the alleged misconduct, and any right to relief therefore

does not rise above the speculative level.  Under *Twomble*y and *Iqbal*, these allegations

are therefore insufficient.  *Huggins Realty, Iqbal, Twombly,* and *Kopp, supra*.

However, even if the defendants' alleged conduct could possibly implicate a valid

possessory interest protected under the Fourth Amendment, which the undersigned holds

is non-existent, the defendants are nevertheless entitled to qualified immunity.  This case

does not fit into any previous category of Fourth Amendment law which the undersigned

has found.  This case does not deal with "personal effects, which the Fourth Amendment

traditionally has been deemed to protect."  *See Cardwell v. Lewis*, 417 U.S. 583, 591, 94

S.Ct. 2464, 2470, 41 L.Ed.2d 325 (1974).

Given the total lack of jurisprudence on this issue, this Court simply cannot find

that the defendants' conduct violated a constitutional right which was clearly established.

Because the unlawfulness of the defendants' conduct in this case was not clearly

established, such that every reasonable Council Member in the defendants' position would

understand that what he was doing violated a right conferred under the Fourth

Amendment, the defendant Council Members would be entitled to qualified immunity

with respect to this claim, if such a claim were legally cognizable.

**B. Equal Protection**

Thubron alleges, in a single conclusory paragraph, that the defendants violated her Fourteenth  Amendment right to equal protection by "discriminat[ing] against plaintiff in their practices by treating her unequally from other parish employees similarly situated. . . ." [*Id*. at ¶ 239].   She provides no further factual support for this claim, other than various conclusory allegations in which Thubron merely states that she was the subject of "purposeful discrimination", "harassment" and "disparate treatment". [*See e.g.* ¶ 101, 200 and 201].

The equal protection clause essentially directs that all persons similarly situated be treated alike. *See City of Cleburne, Texas v. Cleburne Living Center, Inc*., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1989). To state an equal protection claim a plaintiff must allege, *inter alia*, that similarly situated individuals were treated differently. *Stoneburner v. Secretary of the Army,* 152 F.3d 485, 491 (5th Cir. 1998) *citing Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992); *Wheeler v. Miller*, 168 F.3d 241, 251 (5th Cir. 1999); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 fn. 15 (5th Cir. 2001).

Ordinarily, equal protection claims are premised on allegations of class-based discrimination. *Wheeler*, 168 F.3d at 252. Thus, a plaintiff must also allege purposeful or intentional discrimination motivating the state action which caused the complained-of injury. *Stoneburner,* 152 F.3d at 491 *citing McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Piotrowski*, 237 F.3d at 578 fn. 15 (citations omitted).

Here, the allegations in Thubron's Amended Complaint, in conjunction with the documents properly considered by this Court on the Motion to Dismiss, fail to establish that Thubron was treated differently than similarly situated persons. To the contrary, the record reveals that the audit was directed at all employees hired after January 11, 2012 and included both persons who occupied a Maintenance Superintendent position, Thubron and Courtney Frioux, although Frioux was no longer employed by the time the audit was performed. [*See* rec. doc. 30-2].  Thus, all employees who met this criteria were similarly situated and, accordingly, were treated exactly alike.

Plaintiff alleges that other rank and file employees who were "historically" paid from the Drainage Fund were not audited.  It is clear, however, that these alleged employees were not similarly situated; there is nothing to suggest that any of these persons were hired after January 11, 2012. These employees therefore did not fit the criteria for the audit.

Even if there was a sufficient showing of disparate treatment, which there is not, Thubron has failed to demonstrate that the complained of actions were motivated by any class-based purposeful or intentional discrimination against her, or discrimination of any kind based on an impermissible classification.  Thubron does not make any factual allegations which would support an inference of purposeful or intentional class-based discrimination which played any part in the actions taken against her, much less that any

such discrimination was based on any impermissible classification.[5]

In sum, Thubron has provided this Court with no more than a conclusory and formulaic recitation of the elements of an equal protection cause of action unadorned by any factual allegations which could plausibly establish each required element of an equal protection claim.  Thubron has failed to present factual allegations to raise her equal protection claim "above the speculative level" and, to the contrary, presents no more than "a suspicion [of] a legally cognizable right of action."  *See Twombly*; *Kopp*; *Lormand, supra*. Under *Twombly* and *Iqbal* these allegations are clearly insufficient.  Thus, Thubron has failed to state a legally cognizable equal protection claim.

Finally, to the extent that Thubron is alleging a selective prosecution or enforcement claim, that claim is likewise not legally cognizable. To successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by an unjustifiable standard such as race, religion, the desire to prevent the exercise of a constitutional right or other arbitrary classification. *Allred's Produce v. United States Department of Agriculture*, 178 F.3d 743, 748 (5th Cir. 1999) *citing Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Bryan v. City of Madison, Mississippi*, 213 F.3d 267, 277 (5th Cir. 2000).  Thubron has not alleged that any unjustifiable standard motivated the defendants; thus, plaintiff's selective prosecution or enforcement equal protection claim is not legally cognizable.

---

[5]Indeed, during oral argument, plaintiff's counsel confirmed that Thubron does not contend that she was the subject of any discrimination based on sex, race, religion, alienage or gender.

Since Thubron has not set forth any legally cognizable Equal Protection claim as a result of the Council Members' alleged actions, this Court need not address the defendants' claim of qualified immunity.

**C. First Amendment Claim**

Thubron alleges that her First Amendment right to free speech was violated when the defendants attempted to ban her from the Iberia Parish administrative offices and restrict her to the Parish barn so that she could not give President Romero input on matters of public concern.  She further asserts that when President Romero did not agree to these restrictions, the defendants retaliated by taking an adverse employment action against her for the exercise of her First Amendment rights.

With respect to the alleged attempt to ban Thubron from the Iberia Parish administrative offices and restrict her to the Parish barn, it is clear that Thubron has alleged no actual constitutional deprivation as a result of the defendants' alleged conduct. Thubron admits in her allegations that despite Council Member Broussard's alleged attempt to quell Thubron's speech, President Romero refused to agree with these demands.  Thus, clearly no First Amendment violation occurred with respect to these allegations.

Thubron's First Amendment retaliation claim fares no better. To establish a § 1983 claim for retaliation, a plaintiff must show: (1) that she suffered an adverse employment action; (2) the plaintiff's speech involved a matter of public concern; (3) the plaintiff's interest in speaking outweighed the government's interest in efficiency; and (4) the

protected speech motivated the adverse employment action. *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004).

The First Amendment protects a public employee's speech in cases of alleged retaliation only if the speech addresses a matter of "public concern." *Harris ex rel. Harris v. Pontotoc County School Distr.,* 635 F.3d 685, 692 (5th Cir. 2011) *citing Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).  Whether an employee's speech can be characterized as constituting speech on a matter of public concern is a legal determination. *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) *citing Connick*, 461 U.S. at 146, 103 S.Ct. 1684.

Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Id. quoting Connick*, 461 U.S. at 146, 103 S.Ct. 1684.  In the public employment context, "[b]ecause almost anything that occurs within a public agency could be of concern to the public, [courts in the Fifth Circuit] 'do not focus on the inherent interest or importance of the matters discussed by the employee.'" *Harris*, 635 F.3d at 692 *quoting Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986).

Rather, the court's task "is to decide whether the speech . . . was made primarily in the plaintiff's role as a citizen or primarily in his role as employee." *Terrell*, 792 F.2d at 1362; *see also Harris*, 635 F.3d at 692.  "In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a

32

great interest is of little moment." *Terrell*, 792 F.2d at 1362; *see also Harris*, 635 F.3d at 692.   Stated differently, speech "not otherwise of public concern does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." *Terrell*, 792 F.2d at 1362 fn. 6 *quoting Connick*, 103 S.Ct. at 1691 n. 8.   In cases of mixed speech or motives, "the speaker must have spoken predominantly 'as a citizen' to trigger First Amendment protection." *Dodd v. Childers,* 933 F.2d 271, 274 (5th Cir. 1991) (citation omitted).

In this case, although plaintiff conclusorily alleges that she was providing "input" on matter of public concern to President Romero, she does not allege that in so doing, she was acting, not as an employee, but rather in her role as a citizen on matters not tied to the personal interests of Thubron and President Romero.  Indeed, given Thubron's apparent additional function as a confidant of  President Romero on the internal affairs of the Council and Parish government, the Court cannot envision how these discussions could be characterized as having been taken in any capacity other than as a trusted employee of President Romero.

Moreover, even if the Court could characterize Thubron's speech as addressing matters of public concern, Thubron has not made sufficient factual allegations for this Court to reasonably infer that Thubron's allegedly protected speech was the motivating force behind the Council's decision to defund Thubron's employment, the alleged adverse employment action herein.  Stated differently, other than Thubron's conclusory allegation

that the her protected speech was the "substantial and motivating factor" behind the decision [ ¶ 222], Thubron fails to provide sufficient supporting factual allegations "to raise [her] right to relief above the speculative level . . ." and to "nudge[] [her] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1974; *Kopp*, 722 F.3d at 333; *Malik*., 305 Fed. Appx. at 167; *Mitchell*, 2008 WL 3244283, at *2.

For these reasons, Thubron has not alleged a violation of her First Amendment rights and this claim must be dismissed for failure to state a claim upon which relief may be granted.  Qualified immunity therefore, need not be addressed.

**D. Procedural Due Process Claim**

Thubron alleges that the defendants denied her procedural due process by voting to defund her position without affording her notice and an adequate opportunity to be heard.

Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.  *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893 (1976) *quoting Morrisey v. Brewer,* 408 U.S. 471, 481 (1972).

Thubron's due process claim depends upon her having a property interest in her continued employment.  *Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir. 1987) *citing Bishop v. Wood*, 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2076–79, 48 L.Ed.2d 684 (1976) and *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33

L.Ed.2d 548 (1972).  Thubron alleges that she had a property interest in her employment by virtue of Article X, § 8 of the Louisiana Constitution, § 4-02 of the Iberia Parish Home Rule Charter ("the Charter"), Ordinance 4372 which changed the Iberia Parish Government Personnel Policy Manual ("Personnel Manual") Acknowledgment Form to exclude an "at will" termination clause, and Attorney General Opinion 12-0044, which found that, pursuant to the Louisiana Constitution, the Charter and in conjunction with the Personnel Manual, "cause" is required to terminate classified employees.  [rec. doc. 25, ¶ 30-39].

The defendants do not dispute that Thubron had a property interest in her employment.  Indeed, such an argument would be unfounded.  The Constitution does not create property interests.  *Roth*, 408 U.S. at 577.  A government employee may possess such an interest when the employer's policy requires "just cause" for dismissal.  *Schaper*, 813 F.2d at 713; *Bolton v City of Dallas*, 472 F.3d 261, 264 (5th Cir. 2006) *citing Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003) ("A property interest is created where the public entity has acted to confer, or alternatively, has created conditions that infer the existence of a property interest by abrogating the right to terminate an employee without cause.");  *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (observing that a public employee who is dismissible only for cause has a property interest in his continued tenure).  In this case, as the Louisiana Attorney General has opined that  although Louisiana is an "at will" employment state [La. Civ. Code art 2747],

35

the Charter and Personnel Manual have abrogated this provision and in so doing, conferred a property interest to Thubron in her continued employment.[6]

Once it is determined that a property interest exists under state law, for purposes of the due process clause of the Fourteenth Amendment, federal law controls as to what process is due. *Henderson v. Sotelo*, 761 F.2d 1093, 1096 (5th Cir. 1985) *citing Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985).

The Supreme Court has consistently has held that some form of hearing is required before an individual can be deprived of a property interest in her employment. *Loudermill,* 470 U.S. at 542 *citing  Roth,* 408 U.S. at 569–570 and *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972); *see also Mathews*, 424 U.S. at 333.   However, "'[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews*, 424 U.S. at 334 *quoting Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).  Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id. citing Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

Accordingly, determination of what process is due generally requires consideration of three distinct factors: First, the private interest that will be affected by the official

---

[6]Opinions of the Attorney General are not binding on the Court, although the Court agrees with the Attorney General on this issue.

action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and third, the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 334-335 *citing Goldberg*, 397 U.S. at 263-271.

In this case, the defendants apparently contend that no process was due because Thubron was not deprived of a property interest in her employment.  Rather, the defendants contend that "the Council did not 'terminate'" Thubron but, rather, merely "temporarily suspended" the funding for Thubron's position "pending rectification of the budgetary and fiscal concerns" . . . "but before the budget issue could be resolved, plaintiff ceased her employ . . . . "  [rec. doc. 30-1, pg. 19-20].  The defendants have presented no argument or evidence whatsoever on the proper balancing of the *Mathews* factors, which apply to all deprivations of property interests, not merely those involving employment disciplinary actions.[7]

However, as Thubron notes in her Opposition, she has plead that she was terminated, or, at a minimum, *de facto* terminated as a result of the Council's action. [rec. doc. 25, ¶ 111, 116, 201, 217, 233, 236, 238].  The documents properly reviewed by this

---

[7] The defendants cite a Louisiana Supreme Court case which deals with civil service employees holding that a "reallocation" of one's job, that is, "a change in the allocation of a position from one class to another class wherein the duties of the position have undergone a change" is a not a disciplinary action within the meaning of the Louisiana Constitution requiring the Louisiana Constitutional procedural protections set forth in Article X, § 8(A) of notice and an opportunity to be heard. *Bell v. Department of Health and Human Resources,* 483 So.2d 945 (La. 1986).  The Court nevertheless then analyzed the *Mathews* factors which apply to all property deprivations, not merely those involving disciplinary actions.

Court support this contention.  *See* rec. doc. 30-4, (providing that salary and benefits funding for Thubron's Maintenance Superintendent position be removed "for the remainder of the year."); rec. doc. 25-6 (Parish President's letter opining that Thubron had been "effectively terminated" as a result of resolution 336); rec. doc. 34-5 (noting that resolution 336 "resulted in the termination" of Thubron's position).

Thubron further repeatedly alleges that she was not provided sufficient notice or an adequate opportunity to be heard prior to the Council's decision to defund her employment.   [*Id*. at  ¶ 97, 126, 135, 146, 156, 166, 176, 186, 196, 233, 237, 238]. Accepting those allegations as true, and in the light most favorable to the plaintiff, the elements of Thubron's Fourteenth Amendment procedural due process claim are sufficiently outlined or may reasonably be inferred.  Thus, Thubron has stated a Fourteenth Amendment procedural due process claim.[8]

This does not, however, end the Court's inquiry.  The individual Council Members claim qualified immunity.  Because Thubron has alleged a constitutional deprivation of her Fourteenth Amendment procedural due process rights, the Court must determine if the defendants' actions were objectively reasonable. *Hall, Estate of Sorrells, Tarver, Kipps*, and *Anderson, supra.*

In this case, the Council Members were faced with a report which undisputably indicated that dedicated tax funds had been, and were continuing to be, used for an

---

[8]However one characterizes what happened to Thubron, whether she was "terminated" or "temporarily suspended" she was no longer being paid.  Clearly, that creates an adverse employment action and harm to Thubron.

unauthorized purpose.  The Louisiana Legislative Auditor allegedly received a copy of the audit on September 5, 2013. [rec. doc. 25, ¶ 77].

Thubron alleges that President Romero initially took the position that all of plaintiff's job duties were substantially related to the funds from which she was paid, and then at the August 22, 2012 meeting, indicated that he was in the process of preparing the necessary figures to correct the situation.  At the September 12, 2012 meeting, President Romero indicated that he had not had time to prepare the requested information. Furthermore, prior to taking any action, the Council had been advised by Assistant District Attorney Wattigny that rectifying action should be taken as soon as possible. Under these circumstances, two motions were made, one to allow President Romero additional time, and the other to defund the position pending a budgetary fix.  The former motion failed by a vote of five to nine; the latter motion passed by a vote of eight to six.

Both options were objectively reasonable under the circumstances.  The former would have resulted in further delay, against the advice of ADA Wattigny, with no consequences if the Parish President again failed to provide the requested information; the latter was intended to expeditiously resolve the problem, in accordance with the advice of ADA Wattigny.  Indeed, under the latter option, the problem was intended to be resolved at the next Council meeting on September 26, 2012,  before the resolution ever took effect.  In any event, given the obvious disagreement of Council Members on the proper course of action to be taken, qualified immunity must be recognized. *Gibson,* 44 F.3d at 277.

For these reasons, the Council Members in their individual capacities are entitled to qualified immunity with respect to Thubron's Fourteenth Amendment procedural due process claim.

**E. § 1983 Conspiracy**

To the extent that Thubron attempts to allege a conspiracy under § 1983, Thubron has failed to allege facts sufficient to give rise to a claim that the Council Members conspired to deprive Thubron of her constitutional rights.  Although "section 1983 plaintiffs may assert conspiracy claims, . . . [a] conspiracy by itself . . . is not actionable under section 1983." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992); *accord Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).

Rather, a conspiracy allegation under § 1983 allows a plaintiff to "impose liability on all of the defendants without regard to who committed the particular act." *Hale*, 45 F.3d at 920.  To state a claim for conspiracy under section 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). To that end, plaintiff is required to plead enough facts to state a claim for relief that is plausible on its face. *Twombly*, 127 S.Ct. at 1974.

General conclusory charges of conspiracy with no specific allegation of facts tending to show a prior agreement cannot survive a motion to dismiss.  The complaint must include specific factual allegations showing a prior agreement, plan or meeting of

the minds between or among the defendants. The bare assertion of a conspiracy will not suffice. *See Twombley,* 127 S.Ct. at 1966; *see also Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999).

Stated differently, Thubron's facts, when "placed in a context . . . [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 127 S.Ct. at 1966; *Jabary v. City of Allen*, 547 Fed. Appx. 600, 611 (5th Cir. 2013) *citing Twombly*; *Bohannan v. Doe*, 527 Fed.Appx. 283, 300 (5th Cir. 2013) (citations omitted) ("A plaintiff must 'allege specific facts to show an agreement.' . . . [a] conclusory allegation that defendants conspired to violate [the plaintiff's] rights does not suffice. . . . ").

Thubron sets forth no specific factual allegations showing a prior agreement, plan, or meeting of the minds between or among the Council Member defendants, and her bare assertion of the existence of a conspiracy is insufficient to state a claim for relief that is plausible on its face. Simply stated, Thubron fails to create a reasonable inference that a prior agreement between the Council Members existed. *See Jabary, supra.*  Her § 1983 conspiracy claim must therefore be dismissed.

## II.  Official Capacity Claims

## Council Members

Thubron has sued the Council Members in their official capacities.  An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent.

*Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985); *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991); *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)[9] ; *Burge v. St. Tammany Parish*, 187 F.3d 452, 466 (5th Cir. 1999).  In this case, Thubron has also sued the Iberia Parish Government and the Iberia Parish Council.[10]

When, as in this case, "the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit [including this Court] have found it is appropriate to dismiss them."  *Marceaux v. Lafayette City-Parish Consol Govt.*, 921 F.Supp.2d 605, 623 (W.D. La. 2013) *citing Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities

---

[9]The Supreme Court in *McMillian* explained that:
> a suit against a governmental officer "in his official capacity" is the same as a suit " 'against [the] entity of which [the] officer is an agent,' " *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) *quoting  Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978) and that victory in such an "official-capacity" suit "imposes liability on the entity that [the officer] represents,"  *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

*McMillian,* 520 U.S. at 785 n. 2, 117 S.Ct. 1734.

[10]The defendants' have not addressed whether the Iberia Parish Council has capacity to be sued, that is, whether the Council is a legal or juridical entity capable of being sued separate and independent from the Iberia Parish Government.  Accordingly, the undersigned has not addressed this issue. The defendants may raise this issue by appropriate Motion.

themselves.") and *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996).

Therefore, Thubron's claims against the individual Council Members in their official

capacities should be dismissed.

**Iberia Parish Government and Iberia Parish Council**

The defendants have not adequately addressed Thubron's claims against either the

Iberia Parish Government or the Iberia Parish Council.  Rather, they apparently contend

that in the event that this Court found that Thubron had failed to state a claim for any

constitutional deprivation, these claims would likewise fail.

When there is no underlying individual constitutional violation for which the

municipal defendant can be held derivatively liable on the basis of its policies or customs,

there can be no liability against the municipality or its employees in their official

capacities. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-529 (5th Cir. 1999);

*Tejada v. Knee*, 228 F.3d 409, 2000 WL 1056124, *2 (5th Cir. 2000) (unpublished);

*Breaux v. Brown,* 2006 WL 3760242, *2 (W.D. La. 2006); *Patin v. Richard*, 2011 WL

9118, *8 (W.D. La. 2011) *citing Ashford v. City of Lafayette*, 2008 WL 5157900, *11

(W.D. La.2008).

In this case, Thubron has failed to set forth a viable Fourth, First or Fourteenth

Amendment equal protection claim, or any constitutional conspiracy claim against any

Council Member in their individual capacities.

However,  even though the Council Members in their individual capacities are immune from suit, the Court has found that Thubron has stated a viable Fourteenth Amendment procedural due process claim.  Thus, there remains an underlying constitutional claim for which the municipal defendants may be held liable.[11]

It is well established that governmental liability under § 1983 must be premised on a government policy or custom that causes the alleged constitutional deprivation.  *Monell v. Dep't of Soc. Servs* ., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003).   Further, liability may be based on an isolated decision made by an authorized policymaker in whom final authority rested regarding the action ordered.  *Cuzzo v. Tangipahoa Parish Council President Government*, 279 F.3d 273, 289 (5th Cir. 2002); *Gelin v. Housing Authority of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006).

_____

[11]The qualified immunity of the individual defendants does not shield a municipality from liability for damages if the municipality is otherwise liable under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  *Heath v. Brown*, 807 F.2d 1229, 1231 fn. 1 (5th Cir. 1987) *citing Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980);  *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) ("unlike various government officials, municipalities do not enjoy immunity from suit – either absolute or qualified – under § 1983. In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury.");  *Trevino v. Gates*, 99 F3d 911, 918 (9th Cir. 1996), *citing Owen,* 445 U.S. at 651–52 ("Even though the Council members are entitled to qualified immunity, the City may still be subject to municipal liability for causing a constitutional violation under 42 U.S.C. § 1983.").

The undersigned has found no requirement that the plaintiff plead that any specific defendant is an official policymaker for the action at issue.  Further, the defendants do not contend that the complained of actions were not taken by official policymakers for the Iberia Parish Government or the Iberia Parish Council.  To the extent that any defendant takes that position, the determination is best made after discovery and in the context of state law and existing local practices.  *See Gelin,* 456 F.3d at 527.

With respect to causation, Thubron has alleged that her termination without due process was the result of the Council's decision to defund her position.  [rec. doc. 25, at ¶ 97, 126, 135, 146, 156, 166, 176, 186, 196, 233, 237, 238].  Clearly, these allegations satisfy any causation pleading requirement as the allegation sets forth a direct causal link between the complained of action and the deprivation of a federally protected right.  *See Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

Accepting those allegations as true, and viewed in the light most favorable to the plaintiff, the elements of Thubron's Fourteenth Amendment procedural due process claim against the Iberia Parish Government and/or the Iberia Parish Council[12] is sufficiently outlined or may be reasonably inferred.  Accordingly, Thubron has set forth a claim for relief which is plausible on its face.  This claim should therefore remain pending.

---

[12]*See* fn. 10, *supra.*

45

### III. Claim Asserted under § 1985(3)

Thubron also asserts a cause of action under § 1985(3), which provides a cause of action to any person injured as a result of a conspiracy to interfere with one's civil rights. For the reasons which follow, Thubron fails to present a cognizable § 1985(3) claim.

Section 1985(3) prohibits, among other things[13], conspiracies that interfere with the private enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws." *See Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)*; Kush v. Rutledge*, 460 U.S. 719, 724-726, 103 S.Ct. 1483, 1486-1487, 75 L.Ed.2d 413 (1983); *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010).

Claims under this subsection require that the conspiracy be motivated by racial or other class-based discriminatory animus.  *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Lockett*, 607 F.3d at 1002*; Jabary, 547* Fed. Appx. at 610 fn. 5;  *Burns–Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.), *cert. denied*, 512 U.S. 1207, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994); *Burrell v. Adkins*, 2007 WL4699166, * 14 W.D. La. 2007) *citing United Brotherhood of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 928–829, 103 S.Ct. 3352, 3355–3357, 77 L.Ed.2d 1049 (1983).  This element is missing in this case. *See infra.*

---

[13] The subsection also prohibits conspiracies to interfere with the right to support candidates in federal elections.  *See Kush*, 103 S.Ct. at 1486-1487.  The second part of this subsection is obviously inapplicable because plaintiff does not complain of any federal election.

Therefore, as is the case with her Equal Protection claim, Thubron has not alleged

or shown a conspiracy motivated by any racial or class-based discriminatory animus.

Accordingly, Thubron has no cognizable claim under § 1985(3).

## IV.  State Law Claims

The decision to exercise or decline supplemental jurisdiction over the state law

claims is entirely within the discretion of this Court. *Wong v. Stripling*, 881 F.2d 200, 204

(5th Cir. 1989). In making this decision, the Court must consider and weigh both the

statutory provisions of 28 U.S.C. § 1367(c)  and the values of judicial economy,

convenience, fairness and comity. *See Carnegie–Mellon Univ. v. Cohill*, 488 U.S. 343,

350–51, 108 S.Ct. 614, 619 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86

S.Ct. 1130, 16 L.Ed.2d 218 (1966). While the general rule of this Circuit is "to dismiss

state claims when the federal claims to which they are pendent have been dismissed,"

*Parker & Parsley Petroleum v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992), the

undersigned is not recommending that all federal claims asserted herein by Thubron be

dismissed; her Fourteenth Amendment procedural due process claim remains.  Under the

circumstances, judicial economy, convenience, fairness and comity would be better

served by the exercise of supplemental jurisdiction, at least for now.

The defendants apparently claim that pursuant to La..R.S. 13:5106 this Court cannot

maintain any state law claims against the municipal defendants (the Iberia Parish

Government and the Iberia Parish Council) under any jurisdictional basis.  That argument is

foreclosed by Fifth Circuit precedent which holds that political subdivisions such as the

Iberia Parish Government, which do not enjoy Eleventh Amendment immunity from suit in

federal court[14], may properly be sued in federal court, notwithstanding any State statutory

provision such as 13:5106(A), that purports to waive common law immunity for state court

actions, so long as there exists a jurisdictional basis created by Congressional statute.  *In re*

*Allied–Signal, Inc.*, 919 F.2d 277 (5th Cir. 1990); *United Disaster Response, LLC v. Omni*

*Pinnacle, LLC,* 511 F.3d 476, 481-482 (5th Cir. 2007); *Global ADR, Inc. v. City of*

*Hammond*, 2004 WL 1752217 (E.D. La. 2004);  *New York Life Ins. Co. v. Plaquemines*

*Parish Comm'n Council*, 1991 WL 161512 (E.D. La. 1991); *American Tel. &Tel. v.*

*Madison Parish Police Jury*, 465 F.Supp. 168, 170 (W.D. La. 1977).  Clearly, this Court

may maintain Thubron's state law causes of action against the Iberia Parish Government and

the Iberia Parish Council under this Court's supplemental jurisdiction pursuant to 28 U.S.C.

---

[14] Immunity under the Eleventh Amendment extends only to the states themselves, or to those entities so substantially intertwined with the state as to be considered an "arm of the state." *See Lake County Estates Inc.*, 99 S.Ct. 1171 (1979);  *In re Allied–Signal*, 919 F.2d at 280 n. 4. Eleventh Amendment immunity from suit in federal court does not apply to "counties, cities, municipal corporations or lesser political subdivisions."  *New York Life,* 1991 WL 161512 at *2 *citing Schultz v. Greater New Orleans Expressway Comm'n*, 250 F.Supp. 89, 92 (E.D. La.1966); *Hopkins v. Clemson Agricultural College*, 31 S.Ct. 654, 657 (1911), *Laje v. R.E. Thomason General Hospital*, 665 F.2d 724, 727 (5th Cir. 1982), *In re Allied–Signal*, 919 F.2d at 280 n. 4. and *Southern Bridge Co. v. Dep't of Highways, State of La.*, 319 F.Supp. 948, 950 (E.D. La. 1970); *Lake County*, 99 S.Ct. at 1177 fn. 19 *citing  Mt. Healthy Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, *Moor v. County of Alameda*, 411 U.S. 693, 717–721, 93 S.Ct. 1785, 1799–1801, 36 L.Ed.2d 596; *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 ("the Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a "slice of state power.");  *Black v. North Panola Sch. Dist.,* 461 F.3d 584, 594 (5th Cir. 2006) *citing Alden v. Maine*, 527 U.S. 706, 756, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), *Mt. Healthy* and *Lincoln County, supra.*.

§ 1367.

## CONCLUSION

Based on the foregoing, it is recommended that the Motion to Dismiss be **granted in part and denied in part** and, accordingly, that plaintiff's federal claims against the Council Members in their individual and official capacities be **dismissed**, that plaintiff's Fourth Amendment**,** Fourteenth Amendment equal protection, First Amendment, § 1983 conspiracy and § 1985(3) conspiracy claims be **dismissed**, and that plaintiff's Fourteenth Amendment procedural due process and state law claims asserted against the Iberia Parish Government and the Iberia Parish Council remain pending.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th**

49

**Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the

District Judge at the time of filing.


Signed May 12, 2014, at Lafayette, Louisiana.


_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE


Copy sent:  RFD
On:  5/12/2014
By:  MBD