RECEIVED
IN LAFAYETTE, LA.
JUL 2 4 2014
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| HOLLY LELEUX-THUBRON | CIVIL ACTION NO. 6:13CV852 |
| VERSUS | JUDGE DOHERTY |
| IBERIA PARISH GOVERNMENT, ET AL. | MAGISTRATE JUDGE HILL |

## RULING

The Second Motion to Dismiss [Doc. 30], filed by defendants, the Iberia Parish Government, the Iberia Parish Council, and Iberia Parish Council Members Thomas J. Landry, Troy F. Comeaux, Bernard Broussard, Ricky J. Gonsoulin, Glenn Romero, Roger Duncan, Jerome Fitch, and Marty Trahan (collectively, the "Council Members"), was referred to United States Magistrate Judge C. Michael Hill for Report and Recommendation. Pursuant to the Report and Recommendation, the Magistrate Judge "recommended that the Motion to Dismiss be granted in part and denied in part and, accordingly, that plaintiff's federal claims against the Council Members in their individual and official capacities be dismissed, that plaintiff's Fourth Amendment, Fourteenth Amendment equal protection, First Amendment, § 1983 conspiracy and § 1985(3) conspiracy claims be dismissed, and that plaintiff's Fourteenth Amendment procedural due process and state law claims asserted against the Iberia Parish Government and the Iberia Parish Council remain pending." [Doc. 43, pp. 1-2 (emphasis omitted)]

Plaintiff has now filed objections to the Report and Recommendation, and defendants have filed their response thereto. [Doc. Nos. 44; 45, pp. 5-6] Plaintiff solely objects to the Magistrate

Judge's recommendation that her Fourteenth Amendment procedural due process claim against the Council Members in their individual capacities be dismissed. [Doc. 44] Specifically, she objects to the Magistrate Judge's recommendation that with respect to that claim, the Council Members, in their individual capacities, are entitled to the defense of qualified immunity. [Id. at pp. 3-4] In support of this position, plaintiff argues her pleadings assert sufficient factual allegations to overcome the defense of qualified immunity in the context of a Rule 12(b)(6) motion.

After an independent review of the record, and considering the objections filed, the Court GRANTS plaintiff's objection for the reasons that follow. Accordingly, the Report and Recommendation is adopted in all respects, save the recommendation that plaintiff's Fourteenth Amendment procedural due process claim against the Council Members in their individual capacities be dismissed.

I.  **Standard of Review**

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable clam. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming* at 161-62. When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011)(internal quotation marks omitted). The plausibility standard is met

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). "In deciding a 12(b)(6) motion to dismiss, the court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343, n.6 (5th Cir. 1994); *see also Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570, n. 2 (5th Cir. 2005).

**II.    Factual Allegations**

Plaintiff alleges the following facts in her complaint:

Plaintiff was a classified, permanent, full-time employee of the Iberia Parish Government. [Doc. 25, p.2] At the time of the events forming the basis of her suit, defendants Landry, Comeaux, Broussard, Gonsoulin, Romero, Duncan, Fitch and Trahan were elected members of the Iberia Parish Council, acting under color of state law. [Id. at pp. 2-3]

On November 19, 2011, Errol "Romo" Romero was elected Iberia Parish President, following a "rigorous campaign" against incumbent Ernest Freyou. [Id. at 5] Shortly after the election, President Romero issued courtesy letters to certain Parish employees, informing them they

would not be retained in his administration. [Id. at pp. 5-6] In response to the letters sent by President Romero, at a January 4, 2012 Parish Council Meeting, the Council adopted a resolution to employ Special Labor Legal Counsel to advise the Iberia Parish Government "regarding the employment status of parish employees in regards to existing personnel policies and procedures. . . ."[1] [Id. at 6-7] At the same council meeting, plaintiff alleges "Defendant Broussard clearly declared, in accord with the Iberia Parish Home Rule Charter, there is a specific protocol for terminating 'rank and file' [employees], which, according to Defendant Broussard required 'just cause.'" [Id. at 7] According to plaintiff, Defendant Broussard additionally "informed . . . [the] Council, that the Personnel Policy Manual contains the policies and procedures for parish employee dismissals and that the policies and procedures contained therein shall be followed." [Id. (footnote omitted)]

At a February 1, 2012 Parish Council meeting, the Council adopted Ordinance 4372, which amended the Employee Acknowledgment Form (contained in the Iberia Parish Government Personnel Policy Manual), to remove the provision whereby Parish employees acknowledged their employment was "at will."[2] [Id.] All defendant Council Members voted in favor of Ordinance 4372. [Id. at 26, 27, 28, 30, 31, 33, 34, and 35] At the same meeting, the Council adopted Resolution No. 2012-42, which provided in pertinent part: "A resolution authorizing the Council Chairman to seek Attorney General and La. State Ethics opinions involving the Parish President's actions, including,

---

[1] Soon after the January 4, 2012 Council meeting, President Romero agreed not to terminate the employment of any of the employees to whom he had previously sent termination letters. [Id. at 7]

[2] According to the minutes of the March 7, 2012 Iberia Parish Council Meeting, Ordinance 4372 was adopted "to bring[] the acknowledgment form in compliance with the Home Rule Charter. . . ." *See* http://www.iberiaparishgovernment.com/uploads/2012-03-07%20Minutes.pdf at p.3 (last visited July 23, 2014).

but not limited to, (A) the termination and rehiring of 'rank and file' employees. . . ."[3] All defendant council members voted in favor of the foregoing resolution.

On February 26, 2012, the Parish President hired plaintiff as a Maintenance Superintendent. [Id. at 10; *see also* Doc. 25-5, p.3] According to the complaint, "Upon Plaintiff's hiring, the Iberia Parish Council and/or Defendants Landry, Comeaux, Broussard, Gonsoulin, Romero, Duncan, Fitch and Trahan, individually and in their capacities as members of the Iberia Parish Council, began to . . . use their elected positions for personal, political vendettas and retribution in an effort to deliberately harass and discriminate against Plaintiff." [Id.] For example, plaintiff alleges in May 2012, defendant Broussard advised President Romero if the President accepted Broussard's selection for Chief Administrative Officer, and "restrict[ed] Plaintiff's employment, including her speech, statements and actions, and . . . ban[ned] Plaintiff from the Iberia Parish Court House, specifically, from the Fourth Floor administrative offices," Broussard and the other defendant council members "would allow Plaintiff to remain employed with Iberia Parish Government." [Id. at 11] Broussard allegedly further advised President Romero that if he did not agree to the foregoing, the council "would pursue a course of action against Plaintiff to terminate Plaintiff's employment." [Id. at 11-12]

Additionally, plaintiff asserts that same month, the Iberia Parish Council retained a private accounting firm to conduct an audit "directed at only employees hired by the Parish President, and particularly Plaintiff," to determine whether those employees met the required job qualifications. [Id. at 14] During the course of the audit, plaintiff met with the auditor and confirmed "that in addition to performing substantilly all essential job functions, included in the job description of Maintenance

---

[3]*See* Minutes of February 1, 2012 Iberia Parish Council Meeting, http://www.iberiaparishgovernment.com/uploads/2012-02-01%20Minutes.pdf, p. 14 (last visited July 23, 2014).

Supervisor she performs other functions as directed by the Parish President," such as attending Council meetings, Town Hall meetings and conferences with the Parish President. [Id. at 15-16; Doc. 25-5, p. 6]

On August 3, 2012, the audit was completed. [Id. at 16] The audit report notes plaintiff's position as Maintenance Superintendent is funded by the Parish Wide Dranage Fund, whose revenue source "is a restricted dedicated property tax for constructing, improving, maintaining or operating drainage facilities in the parish." [Doc. 25-5, p. 6] The auditor recommended plaintiff "separate her actual time performing other functions as directed by the Parish President that should not be charged to the parish Wide Drainage Fund." [Id.] The auditor further recommended the Parish Wide Drainage Fund be reimbursed "from a non dedicated revenue source for the estimated cost of the time spent that does not conform to the dedicated purposes of the property tax." [Id.] Finally, "[g]oing forward, administration may want to consider allocating a percentage of compensation based upon preliminary time estimates spent between dedicated purposes and non dedicated purposes and readjust that percentage based upon actual time records for the previous six month period." [Id.]

At an August 22, 2012 council meeting, President Romero advised the council "he was in the process of preparing figures and separating Plaintiff's time for extra work, if any, as recommended in the audit report." [Doc. 25, p. 19] According to plaintiff, "No formal request by resolution was made by the Iberia Parish Council . . . to have the Parish President rectify their so-called budgetary concerns." [Id.]

On September 12, 2012, another council meeting was held. The publicly published agenda notes Defendant Landry would propose Resolution Summary No. 339, described as: "A resolution requesting a report and detailed plan of action by the Parish Administration rectifying the present

situation of the payment of salary to the Drainage Maintenance Superintendent, who has assumed other duties which should be funded from a non-dedicated source." [Doc. 25, p. 17][4] However, at the council meeting, Defendant Landry offered a substitute motion of Resolution Summary No. 339, which provided as follows:

> A resolution, as amended, to amend the 2012 Parishwide Drainage Maintenance Fund budget **to remove the funding for the salary and benefits for the Drainage Maintenance Superintendent position** until the recommendation of the recent report by Kolder, Champagne, Slaven and Company is rectified and further requesting a report and detailed plan of action by the Parish Administration rectifying the present situation of the payment of salary to the Drainage Maintenance Superintendent, who has assumed other duties which should be funded from a non-dedicated source.

[Doc. 30-4, p. 2 (bold emphasis added; capitalization omitted); *see also* Doc. 25, pp. 19-20] Resolution No. 339 was adopted, with all defendant Council Members voting in favor of the resolution. [Doc. 30-4, p. 3] Plaintiff asserts the publicly published agenda "does not provide any notice to Plaintiff that Defendants had any intention of defunding her employment, thereby denying her the opportunity for a hearing," nor was she ever provided any other notice that the Council would defund her position. [Doc. 25, pp.17, 20] According to plaintiff, "As of September 27, 2012, Plaintiff's position was no longer funded, and she was separated from her employment by the Iberia Parish Council . . . ." [Id. at 20]

Plaintiff alleges she had a property interest in her employment by virtue of Article X, § 8 of

---

[4]*See also* Agenda for September 12, 2012 Iberia Parish Council Meeting, http://www.iberiaparishgovernment.com/uploads/A20120912.pdf at p. 2 (last visited July 14, 2014).

the Louisiana Constitution[5], § 4-02 of the Iberia Parish Home Rule Charter[6], the Employee Acknowledgment Form (contained in the Iberia Parish Government Personnel Policy Manual, as amended by Ordinance 4372, to exclude the "at will" termination clause), and Attorney General Opinion 12-0044 (which found, pursuant to the Louisiana Constitution, the Iberia Parish Home Rule Charter and the Iberia Parish Personnel Manual, "no permanent classified employee may be dismissed without cause").[7] [Id. at 8-10] Plaintiff further asserts based upon the foregoing documents, as well as Defendant Broussard's statements at the January 4, 2012 Parish Council Meeting that "rank and file" employees could only be terminated for "just cause," the Council Members "had full knowledge and understanding that a classified ('rank and file') employee could not be dismissed except for 'just cause.'" [Id. at 7-10] Thus, plaintiff asserts the defendant Council Members have deprived her of her right to procedural due process, as provided by the Fourteenth Amendment to the United States Constitution. [Id.]

### III. Procedural Posture

With regard to plaintiff's claim for violation of her procedural due process rights against the

---

[5] Article X, § 8 provides in pertinent part: "No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except *for cause* expressed in writing." LSA-Const. Art. 10, § 8 (emphasis added).

[6] Section 4-02 of the Iberia Parish Home Rule Charter establishes "a classified personnel system," which "shall include all officers and employees of the Parish," unless specifically excepted therefrom. [Doc. 25, p. 20]

[7] *See La. Atty. Gen. Op. No. 12-0044*, 2012 WL 4865704, p. 6 (Sep. 18, 2012). The Attorney General Opinion was requested by defendant Comeaux. *Id.* at 1; *see also* Doc. 25, p. 10. Although the opinion did not issue until six days after the Council voted to defund plaintiff's position, it appears it issued ten days before the resolution defunding plaintiff's position took effect. [Doc. 34-5, p. 4 ("WHEREAS, the adoption of Resolution No. 2012-339, adopted September 12, 2012, deleted the funding for the salary and benefits of the Parishwide Drainage Maintenance Superintendent, which Resolution became effective on September 28, 2012 and further which resulted in the termination of said position for the remainder of the year. . . .")]

Council Members in their individual capacities, the Magistrate Judge found plaintiff had sufficiently set forth in her complaint a Fourteenth Amendment procedural due process claim. [Doc. 43, p. 38] However, finding defendants' actions to be objectively reasonable, the Magistrate Judge recommended defendants be granted qualified immunity, reasoning as follows:

> In this case, the Council Members were faced with a report which undisputably indicated that dedicated tax funds had been, and were continuing to be, used for an unauthorized purpose. The Louisiana Legislative Auditor allegedly received a copy of the audit on September 5, 2013. [rec. doc. 25, ¶ 77].
>
> Thubron alleges that President Romero initially took the position that all of plaintiff's job duties were substantially related to the funds from which she was paid, and then at the August 22, 2012 meeting, indicated that he was in the process of preparing the necessary figures to correct the situation. At the September 12, 2012 meeting, President Romero indicated that he had not had time to prepare the requested information. Furthermore, prior to taking any action, the Council had been advised by Assistant District Attorney Wattigny that rectifying action should be taken as soon as possible. Under these circumstances, two motions were made, one to allow President Romero additional time, and the other to defund the position pending a budgetary fix. The former motion failed by a vote of five to nine; the latter motion passed by a vote of eight to six.
>
> Both options were objectively reasonable under the circumstances. The former would have resulted in further delay, against the advice of ADA Wattigny, with no consequences if the Parish President again failed to provide the requested information; the latter was intended to expeditiously resolve the problem, in accordance with the advice of ADA Wattigny.[8] Indeed, under the latter option, the problem was intended to be resolved at the next Council meeting on September 26,

---

[8] In her objections, plaintiff argues, "Courts have determined 'reliance on counsel's legal advice constitutes a qualified immunity defense only under '*extraordinary circumstances*.'" [Doc. 44, p. 7 (emphasis in original) (quoting *Silberstein v. city of Dayton*, 440 F.3d 306, 318 (6th Cir. 2006); *see id.* at pp. 7-8 for additional non-binding authority] The Court additionally notes the following authority from this Circuit: *Crowe v. Lucas*, 595 F.2d 985, 992 (5th Cir. 1979)("Reliance on advice of counsel does not serve as an absolute defense. Rather, it is among the calculus of facts that a jury is to consider on the issue of good faith."); *Brassell v. Turner*, 468 F.Supp.2d 854, 860 (S.D.Miss. 2006)(Reliance on advice of counsel is merely a factor to consider in determining whether qualified immunity exists; however, most courts will find qualified immunity exists *where the law is unclear* and the state actor consulted with, and relied upon, advice of counsel); *Buford v. Holladay*, 133 F.R.D. 487, 496 (S.D.Miss. 1990)("advice of counsel . . . is merely one of several factual circumstances that may be considered" in determining whether an official's conduct was objectively reasonable).

> 2012, before the resolution ever took effect.[9] In any event, given the obvious disagreement of Council Members on the proper course of action to be taken, qualified immunity must be recognized. *Gibson*, 44 F.3d at 277.[10]
>
> For these reasons, the Council Members in their individual capacities are entitled to qualified immunity with respect to Thubron's Fourteenth Amendment procedural due process claim.

[Id. at 38-40]

As noted, plaintiff has now filed objections to the Report and Recommendation, arguing she has pleaded sufficient factual allegations to overcome the defense of qualified immunity in the context of a Rule 12(b)(6) motion to dismiss, specifically arguing the defendants' actions were not objectively reasonable. [Doc. 44, pp. 6-16] Defendants assert their actions "were objectively reasonable under the circumstances." [Doc. 45-1, p. 5] Although defendants "concede" plaintiff's "employment with the Iberia Parish Government required due process before termination," they argue they did not terminate plaintiff, but rather, merely "directed the Parish President to remedy the improper use of dedicated funds for non-dedicated purposes." [Id.]

### IV. Applicable Law and Analysis

#### 1. 42 U.S.C. § 1983

To state a cause of action under § 1983, a plaintiff must allege two elements: first, that the

---

[9]According to the complaint, on September 20, 2012, President Romero proposed a transfer to the Parish Wide Drainage Fund of an amount constituting 18.75% of the total salary paid to plaintiff since her hiring from a non-dedicated source. [Doc. 25, p. 21] However, according to plaintiff, despite council members expressing their concern "regarding the urgency of the funds to be reimbursed," the council failed to address the President's proposal at council meetings held September 26, October 10, October 15, October 24, November 5, November 13, and November 14, 2012. [Id. at 21-23] On November 19, 2012, the council adopted the Parish President's proposal. [Id. at 23]

[10]The statement from *Gibson* upon which the Magistrate Judge relies reads as follows, "if officers of reasonable competence *could* disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).

plaintiff was deprived of a right or interest secured by the Constitution and laws of the United States and, second, that the deprivation occurred by someone acting under color of state law. *Lauderdale v. Texas Dept. of Criminal Justice*, 512 F.3d 157, 165 (5th Cir. 2007). In this matter, plaintiff has alleged the Council Members violated her Fourteenth Amendment right to procedural due process by defunding her position without providing her notice or an adequate opportunity to be heard, and that the Council Members took this action under color of state law.

2.      **Procedural Due Process**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Sepulvado v. Jindal*, 739 F.3d 716, 721 (5th Cir. 2013). "Procedural due process considers not the justice of a deprivation, but only the means by which the deprivation was effected." *Caine v. Hardy*, 943 F.2d 1406, 1411 (5th Cir. 1991). Stated differently, "In procedural due process claims, the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)(emphasis in original); *see also Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 222 (5th Cir. 2012)("[T]he injury that stems from a denial of due process is not the liberty or property that was taken from the plaintiff, but the fact that it was taken without sufficient process"). "[A] deprivation of procedural due process is actionable under § 1983 without regard to whether the same deprivation would have taken place even in the presence of proper procedural safeguards." *Zinermon* at 126, n.11.

Procedural due process claims require a two-part analysis: (1) whether the plaintiff has a liberty or property interest that is entitled to procedural due process protection; and (2) if so, what

process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). As to the first element: "The Fourteenth Amendment's Due Process Clause does not create a property interest in government employment. Rather, property interests stem from independent sources. A government employee may possess such an interest by operation of contract or state law, or perhaps a policy." *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997). Additionally, "such an entitlement may be expressed . . . through 'the existence of rules and understandings, promulgated and fostered by state officials, that may justify [a plaintiff's] legitimate claim of entitlement to continued employment absent sufficient cause.'" *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988)(quoting *Henderson v. Sotelo*, 761 F.2d 1093, 1096 (5th Cir. 1985)). In the Fifth Circuit, "Case law establishes that a state or local law requirement of good or just cause for termination precludes arbitrary termination and therefore creates a property right in continued employment free from arbitrary termination." *Id.* at 848 (emphasis omitted).

In this matter, defendants do not dispute plaintiff had a Constitutionally protected property interest in her employment. [Doc. 45-1, p. 5] As alleged in the complaint, plaintiff asserts a property interest in her employment by virtue of Article X, § 8 of the Louisiana Constitution, § 4-02 of the Iberia Parish Home Rule Charter, the Employee Acknowledgment Form contained in the Iberia Parish Government Personnel Policy Manual, and Attorney General Opinion 12-0044. [Doc. 25, pp. 8-10] The Court finds these allegations sufficiently set forth a property interest entitled to procedural due process protection.

With regard to the second inquiry, once it is determined that a Constitutionally protected property interest exists under state law, federal law dictates what process is due. *Henderson v. Sotelo*, 761 F.2d 1093, 1096 (5th Cir. 1985). In that regard, the Supreme Court has stated:

> An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth*, 408 U.S., at 569-570.[11] **As we pointed out last Term, this rule has been settled for some time now.** Even decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination opportunity to respond. For example, in *Arnett* six Justices found constitutional minima satisfied where the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits. See also *Barry v. Barchi*, 443 U.S. 55, 65, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979) (no due process violation where horse trainer whose license was suspended "was given more than one opportunity to present his side of the story").

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)(bold emphasis added).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Id.* at 334 (internal punctuation omitted)(quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The determination of whether proper procedural protections have been afforded requires the consideration of three factors:

---

[11]In certain situations not applicable here, post-deprivation process is sufficient to comport with procedural due process requirements. *See e.g. Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Woodard v. Andrus*, 419 F.3d 348, 351 (La. 2005)("The *Parratt/Hudson* doctrine . . . dictates that a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy").

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Applying the foregoing factors, the Court finds: (1) plaintiff had a private interest in continuing her employment; (2) defendants "did not provide *any* process prior to . . . [defunding plaintiff's position], which increases the risk of an erroneous deprivation, and means that any procedural safeguards would be highly valuable"; and (3) while defendants may have a strong interest in ensuring Parish employees are paid from appropriate funding sources, the Court does not find "that providing some sort of predeprivation procedure would be overly burdensome." *Bowlby*, 681 F.3d at 221 (emphasis in original). Although due process is flexible and "'permits varied types of hearings, from informal to more formal evidentiary hearings,'" in a situation such as plaintiff's, "due process demands more than no hearing at all." *Id.* (quoting *Ecee, Inc. v. FERC*, 645 F.2d 339, 352 (5th Cir. 1981)). Accordingly, the Court finds (as did the Magistrate Judge) that plaintiff's allegations create a reasonable inference that her procedural due process rights were violated, thereby fulfilling the plausibility standard for pleading required to survive a Rule 12(b)(6) motion to dismiss.

### 3. Qualified Immunity

The individual Council Members have asserted the defense of qualified immunity. The parameters of qualified immunity, an affirmative defense, have been set forth by the Supreme Court as follows:

> When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." On the

other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. *Ibid.* Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.

*Anderson v. Creighton*, 483 U.S. 635, 638 (1987)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 819, 818 (1982)(other citations omitted)). The *Anderson* court additionally sets forth that which is required in order to find a right is "clearly established":

[O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640.

When qualified immunity is asserted, plaintiff bears the burden of rebutting that defense. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301-302 (5th Cir. 2004). Determining whether a plaintiff's allegations are sufficient to overcome the defense of qualified immunity involves a two-step analysis. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). First, the Court must inquire whether the plaintiff has alleged the violation of a clearly established constitutional right. *Id.* "The second step is to 'decide whether the defendant's conduct was objectively reasonable' in light of legal rules clearly established at the time of the incident." *Jones v. City of Jackson*, 203 F.3d 875, 879 (5th Cir.2000)(quoting *Spann v. Rainey*, 987 F.2d 1110, 1114

(5th Cir.1993)).

To determine whether plaintiff's right to receive predeprivation process was "clearly established," a court must ask whether "the law so clearly and unambiguously prohibited the conduct that *every* reasonable official would understand that what he is doing violates the law." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (emphasis in original). The court must "be able to point to 'controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity.'" *Id.* (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011)).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong*, 380 U.S. at 552). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (quoting *Mullane*, 339 U.S. at 313). The Supreme Court "ha[s] described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Id.* (emphasis in original) (quoting *Boddie*, 401 U.S. at 379). Fifth Circuit law is clear that a property interest in continued employment, free from arbitrary termination, is created by state or local laws requiring good or just cause be found prior to an employee's termination. *Evans* at 848; *see also Logan*, 455 U.S. at 430 ("The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause'"); *Loudermill*, 470 U.S. at 542 (rule requiring "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment "has been settled for some time now"); *Findeisen v. North East Independent School*

*Dist.*, 749 F.2d 234, 237 (5th Cir. 1984). Thus, like the Magistrate Judge, the Court finds plaintiff's property interest in her continued employment was obvious, and the alleged failure to provide predeprivation process was a violation of plaintiff's clearly established right under the Fourteenth Amendment.

For purposes of the second prong of the qualified immunity analysis, the Court examines whether the officials alleged conduct was objectively reasonable, taking plaintiff's well-pleaded factual allegations as true, in the light most favorable to plaintiff. *Williams-Boldware v. Denton County, Tex.*, 741 F.3d 635, 643 (5th Cir. 2014); *Floyd v. City of Kenner, La*, 351 Fed.Appx. 890, 896 (5th Cir. 2009). The objective reasonableness determination turns on whether a reasonable official could believe his conduct was lawful, in light of clearly established law and information possessed by the official. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir.1988). "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Id.* Courts must "perform an objective analysis of the reasonableness of the official's conduct in light of the circumstances and are forbidden from considering the official's 'subjective state of mind.'" *Swindle v. Livingston Parish School Bd.*, 655 F.3d 386, 401 (5th Cir. 2011)(quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir.2001)). "'Objective reasonableness is a matter of law for the courts to decide[.]'" *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)(quoting *Williams v. Bramer*, 180 F.3d 699, 702 (5th Cir. 1999)).

Under the second prong of the qualified immunity analysis, the Court concludes the conduct of the Council Members, as alleged, cannot be found as objectively reasonable for purposes of a motion couched under Rule 12(b)(6), such that movants' position should prevail under the

procedural vehicle now before the Court. First, as discussed *supra*, Fifth Circuit law is clear on this issue, and thus, defendants should have known they could not terminate plaintiff without providing her notice and an opportunity to be heard. Moreover, in this matter, the Council Members had actual and specific knowledge that classified, permanent employees of the Parish were entitled to due process protections, as evidenced by defendant Broussard's alleged statements at the January 4, 2012 Council Meeting that "rank and file" employees could only be terminated for "just cause," and by virtue of the Council's adoption of Ordinance 4372 at the February 1, 2012 Council Meeting, whereby the Council removed the "at will" provision from the Employee Acknowledgment Form.

As previously noted, defendants assert their actions "were objectively reasonable under the circumstances." [Doc. 45-1, p. 5] Although defendants "concede" plaintiff's "employment with the Iberia Parish Government required due process before termination," they argue they did not terminate plaintiff, but rather, merely "directed the Parish President to remedy the improper use of dedicated funds for non-dedicated purposes." [Id.] For purposes of Rule 12(b)(6), the Council Members' argument cannot carry the day. Here, plaintiff alleges she was terminated, or, at a minimum, *de facto* terminated as a result of the Council's adoption of Resolution Summary No. 339, which defunded her position for "the remainder of the year." [Doc. 30-4, p.3] Other documents properly reviewed by this Court support her contention. [*See e.g.* Doc. 25-6 (Parish President's letter opining plaintiff had "been effectively terminated, not for any disciplinary reasons, but because the council's actions to 'defund' the position she currently holds terminates her employment"); Doc. 34-5 (Min. of 11-19-12 Council Meeting, referencing the Council's actions to defund plaintiff's position, "which resulted in the termination of said position for the remainder of the year")] Regardless of how defendants choose to characterize their actions in defunding plaintiff's

employment position, it is alleged, and there is evidence to support, that plaintiff was given no notice that her job was to be eliminated at the council meeting, and as a result of the action taken at the council meeting, plaintiff no longer has a job and is no longer being paid. "There can be no doubt that the plaintiff's interest in his salary and expense reimbursement is a property interest protected by the Constitution." *Eguia v. Tompkins*, 756 F.2d 1130, 1138 (5th Cir. 1985).

Where the law "was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). Here, defendants cite no "extraordinary circumstances" to prove they "neither knew nor should have known of the relevant legal standard." *Id.* at 819. The defunding of plaintiff's employment position without notice and without plaintiff being afforded an opportunity to be heard, as alleged in the complaint, "cannot be described as objectively reasonable under current Supreme Court and Fifth Circuit precedent." *Jabary v. City of Allen*, 547 Fed.Appx. 600, 610 (5th Cir. 2013). For these reasons, the Court concludes plaintiff has carried her burden of demonstrating defendants are not due the relief requested pursuant to their motion brought under Fed. R. Civ. P. 12(b)(6).

## V.   Conclusion

In light of the foregoing, defendants' motion to dismiss [Doc. 30] is GRANTED IN PART and DENIED IN PART. All federal law claims against the Council Members in their individual and official capacities are dismissed, with the exception of plaintiff's claim against the Council Members in their individual capacities for the violation of her Fourteenth Amendment right to procedural due process, which shall remain pending; plaintiff's Fourth Amendment, Fourteenth Amendment equal protection, First Amendment, § 1983 conspiracy and § 1985(3) conspiracy claims are dismissed;

plaintiff's Fourteenth Amendment procedural due process and state law claims asserted against the Iberia Parish Government and the Iberia Parish Council shall remain pending.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 24 day of July, 2014.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE