# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **HOLLY LELEUX-THUBRON** | * | **CIVIL NO. 6:13-0852** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **IBERIA PARISH GOVERNMENT, ET AL**. | * | **MAGISTRATE JUDGE HILL** |

## <u>MEMORANDUM RULING</u>

Pending before the Court are the Motions to Disqualify Counsel filed by the plaintiff, Holly Leleux-Thubron (Thubron") [rec. doc. 100] and Iberia Parish President, Errol Antoine "Romo" Romero ("Romero"), who is not a party to this litigation. [rec. doc. 99].

By these Motions, Thubron and Romero seek to disqualify defense counsel, J. Phil Haney ("Haney") formerly District Attorney for the 16th Judicial District, Haney's former Office, the District Attorney's Office for the Sixteenth Judicial District , Gary McGoffin ("McGoffin") and his law firm, Durio McGoffin, Stagg & Ackermann, P.C., (collectively "defense counsel"), attorneys of record for all named defendants in this action – the Iberia Parish Government ("Iberia Parish"), the Iberia Parish Council (the "Council") and Iberia Parish Council Members Thomas J. Landry, Troy F. Comeaux, Bernard Broussard, Ricky J. Gonsoulin, Glenn Romero, Roger Duncan, Jerome Fitch, and Marty Trahan (collectively the "Council Members").  The named defendants have filed Opposition [rec. doc. 106], to which Thubron and Romero have filed Replies. [rec. docs.113 and 111].

For those reasons set out below, the Motions to Disqualify Counsel [rec. docs. 100 and 99] are **denied**.

The general facts regarding the merits of this case have been set forth in previous rulings issued by this Court and will not be set forth in detail again in this ruling. Essentially, Thubron claims that the named defendant Council Members denied her procedural due process by voting to defund her position as a Maintenance Superintendent for Iberia Parish, without affording her notice and an adequate opportunity to be heard.  The facts applicable to the instant Motions to Disqualify Counsel are discussed below.

Both Thubron and Romero seeks an order of this Court disqualifying defense counsel from representing the named defendants in this proceeding.  They argue that the representation of the named defendants by Haney and McGoffin is in violation of the Rules of Professional Conduct as that representation is directly adverse to their purported client, Romero, thereby presenting an unwaivable conflict of interest.  More specifically, they primarily argue that a concurrent conflict of interest exists because defense counsel took the deposition of Romero in this case and have declared their intention to use and publish this deposition, which has prompted the filing of a Motion for Protective Order by Romero pursuant to Rule 26(c), FRCP.  The Movants' contentions are primarily based on Article IX, § 9-01 of the Iberia Parish Home Rule Charter which provides that the Iberia Parish District Attorney, formerly Haney, "shall serve as the legal advisor to the Parish Council, Parish President and all Parish departments, offices and agencies."

As was the case with the plaintiff's prior Motion for Sanctions filed pursuant to 28 U.S.C. § 1927,  none of the named defendants, McGoffin's and Haney's clients in this case,

or anyone authorized by them, has appeared, argued or even suggested that McGoffin or Haney have a conflict, much less a conflict which is unwaivable. To the contrary, one of defense counsel's clients, Council Member Broussard, testified in support of defense counsels' argument at the hearing of the Motion for Sanctions.[1]

Since the filing of the instant Motions, the current District Attorney for the Sixteenth Judicial District, Martin B. Duhe ("Duhe"), has been substituted as counsel of record for Haney. [rec. doc. 115].  Where appropriate, the Court has construed the arguments against representation by Haney as arguments to disqualify Duhe.  For the sake of clarity, however, the Court in this Ruling will refer to Haney as defense counsel, not Duhe.

**Standing**

A plaintiff has standing to seek disqualification of defense counsel even though she is not an aggrieved client because a plaintiff's attorney is authorized to report any ethical violations committed in the case. *Hughes v. Pogo Producing, Co.,* 2009 WL 1938988, * 3 (W.D. La. 2009) *citing Williamson Tobacco Corp., et al. v. Lockwood–Greene Engineers et al.*, 563 F.2d 671, 673 (5th Cir. 1977); *see also  King v. Martin*, 2012 WL 4959485, *3 (W.D. La. 2012) .[2]  Thus, Thubron has standing to assert the instant Motion.

---

[1]With respect to her prior Motion, to the extent that Thubron may have sought the imposition of sanctions against McGoffin based on any alleged violation of either the ABA Model Rules or the Louisiana Rules of Professional Conduct, the Court held that such allegations do not provide a basis upon which to impose civil liability upon an attorney, the requested relief in that Motion.  In the instant Motion, the relief sought by Thubron is disqualification, not sanctions.

[2]In so finding, the Court relies on precedent from this District Court.  The Court notes, however, that the Southern District of Texas has held the opposite, that an opposing party lacks standing to present a Motion to Disqualify opposing counsel.  *Clemens v. McNamee*, 2008 WL 1969315 (S.D. Tex. 2008).

Romero, on the other hand, is not a party to this litigation.  Thus, the above cited jurisprudence does not expressly apply to him.  Romero was not permitted to intervene in this action as no grounds for his requested intervention exist.  Rather, Romero's sole involvement in this case is that of Movant for a protective order, in which Romero seeks to prevent the use of the deposition in anticipated unrelated litigation and the general publication and disclosure of his deposition which was taken by defense counsel in connection with this case.

In support of standing, Romero cites numerous cases.  However, in each of these cases, the movant was a party to the lawsuit.[3]   Accordingly, with the exception of one case in which the Court expressly rejected the Movant's argument[4], standing of the movant was not at issue. In this case, Romero admits that he is not a party to this litigation.

Romero also relies on *United States v. Gopman*, 531 F.2d 262 (5th Cir. 1976) for the proposition that any attorney who discovers an ethical violation is obligated to bring the problem to the Court's attention.[5]  The *Gopman* court stated that "[w]hen an attorney

---

[3] *Musicus v. Westinghouse Electric Corp*., 621 F.2d 742 (5th Cir. 1980)*; In re; American Airlines, Inc*., 972 F.2d605 (5th Cir. 1992); *United States v. Edwards*, 39 F.Supp.2d 716 (M.D. La. 1999); *King,* 2012 WL 4959485.

[4] *See King,* 2012 WL 4959485 at *3.

[5] *Gopman* involved a Motion for Disqualification filed by the government, which sought the disqualification of an attorney from representing witnesses before a federal grand jury, which was considering evidence for the possible issuance of a criminal indictment. Thus, at that time, there was no pending federal criminal case to which there could be "parties" before the Court.  The Court founded its jurisdiction to discipline the attorney based on its supervisory power over federal grand jury proceedings. *Id.* at 266.

4

discovers a possible ethical violation concerning a matter before a court, he is not only authorized but is in fact obligated to bring the problem to that court's attention."  *Id*. at 265. The *Gopman* court cited a 1972 Southern District of New York case, *Estates Theatres, Inc v. Columbia Pictures Industries, Inc.*[6], which, in turn, cited the American Bar Association Code of Professional Responsibility Disciplinary Rule 1-103 as the basis for its ruling.  At that time, Rule 1-103 stated, "A lawyer possessing unprivileged knowledge of a violation of DR 1-102 [relating to the propriety of professional conduct] shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation." *Estates Theatres*, 345 F.Supp. at 98 and fn. 7.  Thus, at that time, the reporting of disciplinary violations by attorneys to the Court was mandated.

Since the issuance of *Gopman* and *Estate Theatres*, however, this reporting requirement has changed.  Attorneys are no longer required to report disciplinary violations to the Court.  *See* Local Rule 83.2.10(2), Rules of the United States District Court for the Western District of Louisiana (requiring that complaints of attorney misconduct initiated by one other than a judge be filed in writing under oath with the Clerk of Court, who refers the Motion to the Chief Judge, or his designee for inquiry); Rule 8.3(a), La. Rules of Prof. Conduct ("A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct . . . shall inform the Office of Disciplinary Counsel."); *see also* Model Rules of Prof. 1 Conduct R. 8.3 & cmt. 3 (2014) ("A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct . . . shall inform the

---

[6]345 F. Supp. 93 (S.D. N.Y. 1972).

5

appropriate professional authority"; "A report should be made to the bar disciplinary agency unless some other agency, such as a peer review agency, is more appropriate in the circumstances.").  Because an attorney is no longer obligated to bring another attorney's alleged disciplinary violation to the Court's attention, the reasoning supporting the ruling of *Gopman* is no longer valid.[7]  Accordingly, the undersigned finds Romero's argument based on *Gopman* unpersuasive.

For these reasons, the Court finds that Romero lacks standing to seek disqualification of defense counsel in this case.  In so finding, the Court notes that even if this Court were to find that Romero has standing to seek disqualification of defense counsel, because Romero's arguments mirror those presented to this Court by Thubron, his Motion would nevertheless be denied for the reasons set forth below.

To the extent that Romero argues that this Court should *sua sponte* address his Motion pursuant to the Court's general supervisory authority over attorneys involved in cases before the Court, that argument is likewise unpersuasive.  While it is clear that this Court has general supervisory jurisdiction to act upon a properly filed Motion for Disqualification, that jurisdiction does not confer standing on Romero to raise the issue. Furthermore, it is well settled that the Court's inherent powers, including the inherent authority to regulate the conduct of attorneys practicing before this Court, "ought to be exercised with great caution" and, accordingly, "must be exercised with restraint and

---

[7]*See Clemens v. McNamee*, 2008 WL 1969315, *4 (S.D. Tex. 2008) (discounting the continued validity of *Gopman* on these grounds.

discretion." *Chambers v. NASCO, Inc*., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) *quoting Ex parte Burr*, 9 Wheat. 529, 531, 6 L.Ed. 152 (1824) and *citing Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980).

Under the facts of this case, and given the resolution of the claims presented to this Court by the plaintiff, Thubron, the Court finds that a *sua sponte* exercise of its inherent powers with respect to Romero's Motion is not warranted.

**Applicable Standards**

The Western District of Louisiana has adopted The Louisiana Rules of Professional Conduct to govern the ethical practice of attorneys practicing before this court. *Hughes v. Pogo Producing Company,* 2009 WL 1938988, *2 (W.D. La. 2009) *citing* LR 83.2.4W (1999) and *Evans v. North Street Boxing Club*, 83 F.Supp. 741, 743 (W.D. La.1999).

The rule of disqualification is not mechanically applied in the Fifth Circuit. *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314. (5th Cir. 1995).  The Western District has noted that the Fifth Circuit has "provided clear guidance as to the need to ensure that any disqualification is linked to an actual, real conflict rather than an imaginary one." *In Re: Cardinal Services,* 2006 WL 2089925, *3 (W.D. La. 2006); *see also  King v. Martin*, 2012 WL 4959485, *3 (W.D. La. 2012) ("the party moving for disqualification must show an actual conflict – not some hypothetical one.").  Further, the Fifth Circuit emphasizes the importance of a party's ability to choose its own counsel.  *FDIC,* 50 F.3d at 1314.  Thus, "Motions to disqualify are generally disfavored and require a high standard of proof so as not to deprive a party of its chosen counsel."  *King*, 2012 WL 4959485 at *3.  Likewise,

because of the "palpable risk of unfairly denying a party the counsel of his choosing" the

disqualification of an entire firm "must not be imposed cavalierly."  *FDIC*, 50 F.3d at 1316.

The party seeking disqualification has burden of demonstrating this high standard of proof.

*Babineaux v. Foster,* 2005 WL 711604, *2 (E.D. La. 2005); *see also In Re: Cardinal*

*Services,* 2006 WL 2089925, at *3 and *5 (holding that the Movants failed to carry their

burden of proof requiring disqualification).

Furthermore, although it is "generally proper" for an opposing party to bring conflict

of interest matters to the court, such objections should be viewed with caution because they

can be misused as a tactical weapon or as a technique to harass.  *FDIC*, 50 F.3d at 1315 and

fn. 14.

**Rule 1.7**

Thubron argues that under Rule 1.7 of the Louisiana Rules of Professional Conduct [8]

defense counsel have a concurrent conflict of interest.  Rule 1.7, which deals with conflicts

of interest involving current clients, provides as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if
> the representation involves a concurrent conflict of interest. A concurrent
> conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will
> be materially limited by the lawyer's responsibilities to another client, a former
> client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under

[8] *See* La. St. Bar Art. 16, Rules of Prof. Conduct 1.7.

8

paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

In the Court's review of the record, the undersigned cannot find that an actual concurrent conflict of interest exists in this case.  Thubron bases her argument on her belief that Romero is a current "client" of Haney and McGoffin. Thubron relies on Article IX, § 9-01 of the Iberia Parish Home Rule Charter ("the Charter") which provides that the Iberia Parish District Attorney, formerly Haney, "shall serve as the legal advisor to the Parish Council, Parish President and all Parish departments, offices and agencies" and correspondence between defense counsel and Romero.

While the Charter may designate the Iberia Parish District Attorney as the "legal advisor" to the Parish President, it is clear from the record before this Court, that Romero is not, *in fact*, an actual "client" of either Haney or McGoffin in this case and that neither Haney or McGoffin has ever actually, *in fact*, been a "legal advisor" to Romero in this case or in any matter substantially related to this case.  In short, it is clear that the Council Members accepted the representation provided to them by virtue of the Charter; it is equally clear that Romero did not.

9

It is undisputed that Romero is not a named defendant in this litigation, and neither attorney has ever represented Romero before this Court.  To the contrary, the record establishes that Romero has, by his own choice, declined any representation or legal advice offered, by Charter mandate or otherwise, by Haney or McGoffin (or their respective organization and law firm), since well before the initiation of this lawsuit.  As early as March, 2012, Romero was asserting "conflict and risk management issues" with regard to the District Attorney's authority to represent Iberia Parish and its constituent parts. [rec. doc. 100-3; 108-2].

Moreover, within one month of the filing of this lawsuit, Romero declined to discuss the facts of this case with Haney and McGoffin outside the presence of counsel of his choosing. [rec. doc. 99-4].  Indeed, counsel for Romero, Mr. Unglesby, has acknowledged by Motion to this Court that he has represented Romero "throughout the course of this matter." [*See* rec. doc. 57, ¶ 2].  This necessarily prompted McGoffin to emphasize the importance of maintaining the attorney-client and work product privileges with respect to their defense of Thubron's claims against their clients in this lawsuit, Iberia Parish and the named Council Members, in correspondence to Romero dated May 31, 2013.[9] [rec. doc. 99-

---

[9]Thubron asserts that the reference in the May 31, 2013 letter establishes an attorney client relationship between Romero and defense counsel.  McGoffin, on the other hand, clearly states in his May 29, 2013 letter to Romero that he was retained as co-counsel with the Sixteenth Judicial District District Attorney "to represent the Iberia Parish Government and the eight individual Council members who have been named as defendants in this federal civil rights lawsuit." [rec. doc. 104-1, pg. 1].  The Court reads the disputed reference, in context, as an attempt to protect the privilege existing between defense counsel and the named defendants. Moreover, Thubron's argument is contrary to the law cited and discussed above which sets forth the test for determining if an attorney-client relationship exists.  *See United States v. Edwards,* 39 F.Supp.2d 716, 722 (M.D. La. 1999) (and cases cited therein).

4]. Romero's rejection of the services and advice of Haney and McGoffin culminated in the necessity of defense counsel having to depose Romero to obtain information necessary to oppose Thubron's Motion for Sanctions, reserving their right to re-depose Romero on the merits of this litigation to obtain information from Romero necessary to the defense of their clients in this case. [*See* rec. docs. 53 and 59].

It is obvious that Romero cannot be a "client" of either Haney or McGoffin unless an attorney-client relationship exists between them. The test for determining whether an attorney-client relationship exists is a subjective one and hinges on the purported client's belief that he or she is consulting the lawyer in his professional capacity with the intention of seeking professional legal advice. *United States v. Edwards,* 39 F.Supp.2d 716, 722 (M.D. La. 1999) (and cases cited therein). Moreover, this subjective belief must be a reasonable one. *Id.*

In light of the above cited evidence before this Court, it is clear that Romero had no such subjective belief, much less any belief that could be deemed reasonable, and no intention whatsoever to consult with, or seek legal services from, either Haney or McGoffin or their organization (the Sixteenth Judicial District District Attorney's Office) or law firm (Durio McGoffin, Stagg & Ackermann, P.C.).

Finally, under the unique facts of this case, for the Court to accept Thubron's argument and find Romero a "client" of Haney and/or McGoffin would lead to absurd consequences.  The Court would, in essence deem Romero to be a client of attorneys which

11

he himself has refused to accept, and would have no effect in this case, other than to deprive the named defendants, none of whom have disavowed defense counsel's representation of them, of their presumably chosen counsel.

For these reasons, there is no actual so-called "direct adversity" conflict present in this case.[10]

For these same reasons, and for those which follow, there is likewise no actual material limitation conflict in this case.[11]  Nothing presented to this Court supports a finding that Haney's or McGoffin's representation of Iberia Parish, the Council and Council Members in this litigation will be materially limited by their purported responsibilities, if any, to Romero at present. To the extent that a conflict may arise in the future on any given matter, and in particular, any alleged lawsuit which may be filed by defense counsel against Romero in his official capacity, the Charter provides guidance.  In the event of such conflict, Section 9-01 requires the District Attorney to notify the Council of the conflict, and after such notification, the Parish President (or other affected constituent), may retain the services of other counsel.

Finally, to the extent that Thubron makes a strained argument that defense counsel's simultaneous representation of Iberia Parish and the Council Members is adverse, that argument is unavailing.  Thubron's argument ignores the reality that Iberia Parish has no reason to thwart the Council Members' defense.  To the contrary, their positions are aligned.

---

[10]See Rule 1.7, *Background*.

[11]See fn. 10.

A legal victory for the Council Members is a legal victory for Iberia Parish.  Further, the remote future possibility that Iberia Parish and its Council Members may, in some unidentified fashion find themselves at odds with each other, is much too tenuous a thread to support the high standard of proof to support disqualification of defense counsel in this case.

For these reasons, Thubron has not carried her burden of demonstrating that an actual conflict of interest exists in this case.  To the contrary, any purported alleged conflict is, at best, merely hypothetical, based on allegations that are not supported by existing facts.

**Rule 1.8**

These same reasons belie Thubron's argument that an actual conflict exists under Rule 1.8(b), which prohibits a lawyer from using information "relating to representation of a client to the disadvantage of the client. . . "  As is clear from the name of the Rule "Conflict of Interest: Current Clients - Specific Rules", and its text, Rule 1.8 provides specific rules applicable to current clients.  Romero is not a current client of either Haney or McGoffin.  Romero did not accept their representation which could have been provided to him by virtue of the Charter.  Thus, neither attorney could have gained any information from Romero, a non-client, which is protected from disadvantageous use.[12]

---

[12]The record amply supports this conclusion.  Romero has resisted communication with defense counsel, and has required his attorney, Mr. Unglesby, to be present during his interview and deposition conducted with respect to this case. [*See e.g* rec. docs. 99-4; 99-6; 57].

**Rule 1.13**

The defendants are correct that Rule 1.13 is also applicable to their representation of Iberia Parish, the Council and the Council Members.[13]  Comment 9 to ABA Model Rule 1.13 explains that the Rule, applicable to the representation of organizational clients, is equally applicable to governmental organizational clients.[14]  The first sentence of Rule 1.13(g) expressly permits the joint representation of the organization, in this case Iberia Parish, and any of its constituents, in this case, the Council and Council Members, subject to the provisions of Rule 1.7, discussed above, which prohibits dual representation when a concurrent conflict of interest is present.[15]  *See* La. St. Bar Art. 16, Rules of Prof. Conduct 1.13(g).  Indeed, the Annotations to the Rule expressly state that "such joint representation is appropriate if there is no conflict of interest."  *See* Louisiana Professional Responsibility Law and Practice, Louisiana State Bar Association, Edited and Annotated by Dane S.

---

[13]The Court has previously noted that it is unclear whether the Iberia Parish Council has capacity to be sued, that is, whether the Council is a legal or juridical entity capable of being sued separate and independent from the Iberia Parish Government.  *See* rec. doc. 43, pg. 42, fn.10; *City Council of the City of Lafayette v. Bowen*, 649 So.2d 611, 616 (La. App. 3rd Cir. 1994) (holding the Lafayette City Council was not a juridical person with procedural capacity to sue or be sued independent of the City of Lafayette).

[14]Rule 1.13, adopted by the Louisiana Supreme Court, is identical to Rule 1.13 of ABA Model Rule of Professional Conduct. *See* Louisiana Professional Responsibility Law and Practice, Louisiana State Bar Association, Edited and Annotated by Dane S. Ciolino, *Background.*

[15]Rule 1.13(g) provides in pertinent part as follows:
A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

Ciolino, Annotations to Rule 1.13, *Multiple Representation of Organization and Constituents*.  The Court has found no actual concurrent conflict of interest exists in this case.  Accordingly, Rule 1.13 does not prohibit Haney's or McGoffin's joint representation of the named defendants in this case, Iberia Parish, the Council and the Council Members.

While Thubron asserts that the second sentence of Rule 1.13(g) requires the authorization of other than the clients in this case, she is incorrect.  The cited portion of Rule 1.13(g) only requires such authorization "[i]f the organization's consent to the dual representation is required by Rule 1.7", that is, under Rule 1.7(b), when a concurrent conflict of interest under paragraph (a) of Rule 1.7 has been found.  That is not the case herein.  Therefore the second sentence of Rule 1.13(g), relied upon by Thubron, is inapplicable.

**Rule 1.9**

Conflicts of interest with regard to representation of former clients is embodied in Rule 1.9.[16]  The Fifth Circuit has set forth the burden of proof required on a motion for disqualification under Rule 1.9 as follows: "A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations."  *Edwards,* 39 F.Supp.2d at 732 *quoting In re American Airlines*, 972 F.2d

---

[16]Rule 1.9 provides in pertinent part as follows:
(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

605, 614 (5th Cir. 1992).  "A substantial relationship may be found only after the moving party delineates with specificity the subject matters, issues and causes of action common to prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent." *In re American Airlines*, 972 F.2d at 614 (citations and internal quotations omitted). The party seeking disqualification bears the burden of proving that the present and prior representations are substantially related. *Id*.  For the reasons which follow, Thubron has failed to carry her burden of proof.

Initially, the Court notes that under a literal reading of the Fifth Circuit's test for disqualification, Thubron's argument fails.  It is undisputed that there has never been an actual attorney-client relationship between Thubron, the moving party, and Haney or McGoffin, the attorneys she seeks to disqualify.  To the extent that the test may be construed as allowing a showing by Thubron of an actual attorney-client relationship between Romero and Haney or McGoffin, that showing has not been made in this case.  As discussed above, Romero has refused to accept the representation of Haney and McGoffin which could have been provided to him by virtue of the Charter, and instead has chosen to retain counsel of his choosing.

Moreover, even if there had been an actual attorney-client relationship between Haney or McGoffin and Romero in the past, which has not been shown, Thubron has failed to demonstrate any substantial relationship between the subject matter of that alleged prior representation and the alleged present representation.  Indeed, it is difficult for this Court to envision how any alleged prior representation of Romero by defense counsel could in any

16

way be related to the present lawsuit in which Thubron claims that the Council Members *de facto* terminated her employment in violation of her Constitutional rights.

**Rule 3.7**

Rule 3.7 prohibits a lawyer from acting both as an advocate and as a witness in the same trial.[17]   The Rule is couched in the future tense and is therefore forward-looking toward trial-related violations. *See In re Cardinal Services, Inc.,* 2006 WL 2089925 at *2. Haney is no longer an attorney of record for the named defendants in this case. Accordingly, there is no basis for finding any possibility of a trial-related violation of Rule 3.7.   Therefore, the plain language of the prohibition contained in Rule 3.7 is not met here. Simply stated, there is no conflict which warrants disqualification of defense counsel in the event that Haney is called to testify at trial.

Furthermore, as to McGoffin, Thubron has failed to establish the component part of Rule 3.7 which precludes disqualification if it would impose a substantial hardship on the client.   McGoffin has represented the named defendants for nearly two years, during which

---

[17]Rule 3.7 provides as follows:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

there has been extensive dispositive and non-dispositive motion practice, necessarily requiring a substantial amount of fact investigation and strategic planning on his part, even though discovery has not yet formally begun.  The Court therefore additionally finds that even if Rule 3.7 were to be applied under the facts of this case, the hardship which necessarily would result to the named defendants from the disqualification of McGoffin would preclude his disqualification.

**Rules 5.4(c), 1.8(f)(2) and 1.7(a)(2)**

Thubron asserts that McGoffin's representation is in violation of Rules 5.4(c)[18], 1.8(f)(2)[19] and 1.7(a)(2)[20] because his professional independence and judgment are being directed by Haney, who, Thubron asserts, is paying for McGoffin's services.  This argument merits little discussion.  In connection with Thubron's prior Motion for Sanctions, this Court was presented with Iberia Parish Resolution numbers 2006-01 and 2006-140, which purport to delegate funding and exclusive management responsibility for the Iberia Parish Government's Risk Management Fund to the District Attorney. [rec. docs. 58-4; 58-5].

---

[18]Rule 5.4(c) provides as follows: "(c) A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."

[19]Rule 1.8(f)(2) provides as follows:
(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
. . .
(2) there is no interference with the lawyer's independence or professional judgment or with the client-lawyer relationship

[20]Rule 1.7(a)(2) states that a concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." Thubron argues that McGoffin's fee arrangement is constitutes a "personal interest."

Based on these Resolutions, and in the absence of any challenges to the source of McGoffin's payment by McGoffin's clients, or anyone authorized by McGoffin's clients, the Court cannot find that Haney is a third-party payor for McGoffin's services as contemplated by the Rules; the source of payment is the Iberia Parish Government's Risk Management Fund.

Moreover, Haney is not a "co-client" in this litigation as suggested by Thubron but, rather, was co-counsel of record with McGoffin for the named defendants.  Finally, there has been absolutely no showing that McGoffin's independence or professional judgment has been interfered with, or directed by, Haney, or that the fee arrangement for McGoffin's services has had any adverse affect on McGoffin's clients in this case, the named defendants. To the contrary, the record before this Court, as well as McGoffin's interactions with this Court during the multiple hearings that have been held in this case, evidences the opposite.

**Imputed Disqualification**

Because the Court has found no conflict with respect to the representation by Haney or McGoffin requiring their disqualification, there is no basis upon which to impute any disqualification to their respective organization, the Sixteenth Judicial District District Attorney's Office, or law firm, Durio McGoffin, Stagg & Ackermann, P.C., respectively.

This is particularly the case given that Haney has left office, and the newly elected District Attoney, Duhe, has been substituted as counsel of record for the name defendants herein. Indeed, even if Haney is called to testify at trial, there is no basis to force Duhe or the District Attorney's Office to resign from this case; Haney will remain impeachable for

19

interest and disqualification of his former Office will likely not resurrect his credibility. *See FDIC*, 50 F.3d at 1315-1316.

Moreover, Rule 3.7(b) expressly permits Duhe to remain in the case because any potential disqualification of Haney imposed under Rule 3.7 is not imputed to Haney's former Office. *See* Louisiana Professional Responsibility Law and Practice, Louisiana State Bar Association, Edited and Annotated by Dane S. Ciolino, Annotations to Rule 3.7*, No Imputation*; Comment 7 to ABA Model Rule 3.7 (explaining that under paragraph (b), "a lawyer is not disqualified from serving as an advocate because a lawyer with whom the lawyer is associated in a firm is precluded from doing so by paragraph (a)"). [21]

**Authority to Appoint**

The Court has previously addressed and rejected these arguments in the Ruling on Thubron's prior Motion for Sanctions.  This Court has been presented with an engagement letter dated April 29, 2013 executed by McGoffin and Haney.  In the absence of any challenges to Haney's or McGoffin's representative authority by their clients in this lawsuit, or anyone authorized by their clients in this lawsuit, the Court will not revisit this issue.

**Duty of Political Loyalty**

Finally, Thubron asserts that defense counsel have violated their duty of "political loyalty" to Romero.  This alleged duty is purportedly outlined in two cases cited by Thubron, *Aucoin v. Haney* 306 F.3d 268 (5th Cir. 2002) and *Finklestein v. Bartholemy*, 678 F.Supp.

---

[21]Rule 3.7, adopted by the Louisiana Supreme Court, is identical to Rule 3.7 of ABA Model Rule of Professional Conduct. *See* Louisiana Professional Responsibility Law and Practice, Louisiana State Bar Association, Edited and Annotated by Dane S. Ciolino, *Background.*

1255 (E.D. La. 1988).  The Court does not read either case as imposing any such duty on Haney or McGoffin under the facts before this Court.  Both cases dealt with the political patronage firing of employee subordinate attorneys (an Assistant District Attorney and an Assistant City Attorney, respectively) by their newly elected and appointed employer superiors (a District Attorney and a City Attorney, respectively), which was alleged to have been in violation of the employee subordinate attorneys' First Amendment rights.  The Courts held that such patronage dismissals did not run afoul of the First Amendment.  Those cases are therefore completely inapposite to the facts and claims presented to this Court.

## CONCLUSION

For the foregoing reasons, the Motions for Sanctions [rec. docs. 99 and 100] are **denied**.

Signed this 23rd  day of January, 2015, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

21